**Dr. Sara SHERKOW, Plaintiff-Appellee,**

v.

**STATE OF WISCONSIN, DEPARTMENT OF PUBLIC INSTRUCTION, Defendant-Appellant.**

**No. 79–2247.**

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1980.
Decided Aug. 20, 1980.

Robert D. Repasky, John W. Calhoun, Asst. Attys. Gen., Madison Wis., for defendant-appellant.

Jeff Scott Olson, Madison, Wis., Karen MacRae Smith, EEOC, Washington, D.C., for plaintiff-appellee.

Before SWYGERT and PELL, Circuit Judges, and BAKER, District Judge.

BAKER, District Judge.[*]

This is an appeal from a judgment of the district court awarding the plaintiff back pay, equitable relief, attorneys' fees, and costs in a sex discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and 2000e–5.

After a trial lasting five days the district court found that the defendant had discriminated against the plaintiff on the basis of sex in not promoting her to the position of Education Administrator I. The court further found that the defendant had unlawfully retaliated against the plaintiff because of her public assertion of her right not to be discriminated against.

In addition to awarding back pay, attorneys' fees and expenses to the plaintiff, the district court ordered the defendant to offer to the plaintiff the next available position commensurate with her qualifications. It further ordered the defendant to expunge from the plaintiff's personnel records the performance evaluation which the court found to have been an act of retaliation and directed that the State Superintendent of Public Instruction personally and publicly deliver the unlawful evaluation to the plaintiff for her personal destruction.

Four claims of error are raised on appeal. They are:

(1) Were the factual findings of the trial judge clearly erroneous;

(2) Did the trial judge correctly apply *McDonnell–Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), with regard to allocation of the burden of proof;

(3) Did the trial judge abuse his discretion in ordering the defendant to expunge the joint evaluation of the plaintiff from the defendant's records and ordering the State Superintendent to publicly and personally deliver this evaluation to the plaintiff;

(4) Was the award of attorneys' fees excessive?

We affirm with the exception of that portion of the equitable relief ordering personal delivery of the retaliatory evaluation by the State Superintendent to the plaintiff.

I

The record reveals that the plaintiff, Dr. Sara Sherkow, a female, applied for promotion to the position of Education Administrator I on January 29, 1974. The plaintiff was first employed by the defendant in May, 1972, as a Planning Analyst in the Planning Division of the Department of Public Instruction.

The plaintiff, who holds a degree of Doctor of Philosophy in educational administration, has substantial classroom teaching and administrative experience. She worked for several years on the development of programs for disadvantaged underachievers in Milwaukee inner city schools. She has served in an administrative position under a

---

[*] The Honorable Harold A. Baker, United States District Judge for the Central District of Illinois, is sitting by designation.

vice-president of the University of Wisconsin and has held an administrative post in a corporate educational services agency in Beloit, Wisconsin, where she worked on the development of programs for students with special educational needs.

Soon after her employment by the defendant, the plaintiff took a leave of absence to seek election as State Superintendent of Public Instruction. She was not elected and subsequently returned to her position in the Planning Division.

While the plaintiff was working in the Planning Division, the Wisconsin Legislature funded a Special Educational Needs Program (SEN). The program, which was to be administered by the State Superintendent, was intended to provide special educational needs projects for public school children who, due to cultural, social, or economic deprivation, were underachievers. Dr. Sherkow was appointed to a committee charged with organization and planning of the Special Educational Needs Program. She was heavily involved in the development of the program and was given substantial responsibilities in connection with it.

In September, 1973, the position of Education Administrator opened up in the newly developing SEN. Dr. Sherkow applied, but the de facto head of the program, Dr. Donald Anderson, was appointed. The plaintiff makes no contention about that appointment. With Dr. Anderson's consent, the plaintiff was appointed an Educational Consultant I in SEN and as such became second in command under Dr. Anderson.

Soon after his appointment Dr. Anderson was offered a position with the United States Army. He accepted and admittedly spent a great deal of time getting his personal affairs in order. He was not available very much, and Dr. Sherkow was left in charge. On January 29, 1974, the plaintiff applied to be appointed to fill the vacancy left by Dr. Anderson's departure. The defendant, under the existing rules, could have appointed Dr. Sherkow because she had previously applied, but chose instead to seek new applicants.

Six other candidates in addition to Dr. Sherkow applied. An examination was given, and a Dr. Pennington was ranked first, Dr. Sherkow second, and Dr. John Lawrence third. Each of the three was interviewed. The job was offered to Dr. Pennington who declined. The defendant then passed over Dr. Sherkow and appointed Dr. Lawrence, a male. This, the district court concluded, was a result of disparate treatment of the plaintiff based upon her sex.

After Dr. Sherkow was denied appointment in favor of Dr. Lawrence, she filed a complaint with the Equal Employment Opportunity Commission, and the defendant was notified of the charges. Then, as the trial judge found "an extraordinary thing happened. For the first time in the entire history of the Department as far as anyone can remember, three administrators prepared a job evaluation of one subordinate." The evaluation of the plaintiff was a remarkable downgrading in comparison to her former evaluations and was conducted by persons who had very little first-hand basis for their opinions.

In addition to the poor evaluation, the defendant undertook to extend the plaintiff's period of employment as a probationer, an act which the Department admits was improper and contrary to the law of Wisconsin. The trial court found these two acts, the evaluation and the illegal extension of probation, to be a candid exercise in vindictiveness and retaliation.

II

We turn first to the defendant's assertion that the findings of fact made by the district court were clearly erroneous. The disputed findings are: (1) that the plaintiff was better qualified for the position of Education Administrator I than Lawrence, the successful male applicant, and (2) that the plaintiff was not appointed to the position because of her public statements on sex discrimination and women's rights.

It is axiomatic that the trial court's findings may only be set aside if clearly erroneous and due regard must be given to

the opportunity of the trial court to judge the credibility of the witnesses. Fed.R. Civ.P. 52(a), *City of Mishawaka v. American Electric Power Co.*, 616 F.2d 976, 979–80 (7th Cir. 1980), *Holsapple v. Woods*, 500 F.2d 49, 51 (7th Cir. 1980), *Federal Savings & Loan Ins. Corp. v. Cook*, 419 F.2d 1296, 1298 (7th Cir. 1969). This case is certainly one in which a crucial consideration was the credibility of the witnesses.

The record reveals, and the district court found, that the plaintiff had higher scores than Lawrence on the qualification test administered by the defendant; that she had extensive background in the field of special education, which Lawrence did not; that she was involved in developing SEN, which Lawrence was not; and that while Lawrence had more general administrative experience, this factor had not weighed heavily in earlier selections for the same position.

The trial judge specifically found the testimony of Dr. Anderson, one of the defendant's key witnesses, on the question of the plaintiff's qualifications to be disingenuous. The district court further found that Mr. Van Raalte, the Department Administrator and chairman of the interview panel, admitted that he had negative reactions to reports of the plaintiff's public statements on the subject of sex discrimination and that this affected his assessment of her qualifications for the job. There is nothing in this record which would lead us to say that the judge's findings were clearly erroneous or to substitute our judgment for his.

### III

■ In this sex discrimination in employment action, where individual disparate treatment is alleged, it is incumbent upon the plaintiff to offer proof of the following propositions in order to establish a *prima facie* case.

(1) The plaintiff is a woman.

(2) The defendant had an employment vacancy which it sought to fill.

(3) The plaintiff possessed the qualifications to fill the vacancy and applied.[1]

(4) The plaintiff was rejected.

(5) The defendant continued to seek other applicants or fill the vacancy with a male applicant.

Variations of these elements are required in all discrimination cases and find their basis in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972). *Accord, Kamberos v. GTE Automatic Elec., Inc.*, 603 F.2d 598, 601 (7th Cir. 1979), *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977).

■ If the plaintiff satisfies that burden, the order and allocation of proof then require the defendant "to articulate some legitimate, nondiscriminatory reason for the [plaintiff's] rejection." *McDonnell-Douglas Corp. v. Green, supra*, at 802, 93 S.Ct. at 1824; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). That requirement is satisfied if the defendant goes forward with evidence and " 'explains what he has done' or 'produce[s] evidence of legitimate nondiscriminatory reasons.' " *Board of Trustees v. Sweeney*, 439 U.S. 24, 25 n.2, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978).

■ The order of proof then would impose upon the plaintiff the burden of proving that the reasons advanced were a pretext and that a motivating or substantial factor in the defendant's decision was discrimination and but for that discrimination the plaintiff would have been appointed. *McDonnell-Douglas Corp. v. Green, supra*, at 804–05, 93 S.Ct. at 1825. *See also Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1976). Throughout this paradigm the ultimate burden of persuasion on the issue of discrimination remains with the plaintiff, who must convince the court by a preponderance of the evidence that he or she has been the victim of discrimination. *See Board of Trustees v. Sweeney, supra*, at 24–25 n.1, and at 27 (Stevens, J., dissenting).

---

**1.** It is not necessary to show that the plaintiff was as qualified as the successful applicant. It is sufficient to show that the plaintiff was qualified. *Davis v. Weidner*, 596 F.2d 726, 730 (7th Cir. 1979).

The defendant asserts on appeal that the trial judge improperly allocated the burden of proof, misapplying the rules set forth in *McDonnell-Douglas Corp. v. Green, supra*, to the facts of the case. While we recognize that the analysis articulated by the district court does not follow the paradigm of the shifting burdens as we set it forth, the result in this case is the same.

Once the plaintiff had established a *prima facie* case [2] and the defendant had come forward with evidence tending to show a business-related, non-discriminatory reason for the plaintiff's rejection, the crucial issue became whether the reasons advanced were a pretext. The trial judge addressed that issue although not in the framework of the model we have suggested and in effect found the reasons advanced by the defendant were a pretext.[3]

The defendant advanced the reason that the plaintiff was not as well qualified as Dr. Lawrence, and the district judge specifically rejected that reason, stating, "In our opinion plaintiff was better qualified than Lawrence and we implied as much in our earlier ruling." The court's rejection of the defendant's explanation is also demonstrated by its characterization of Dr. Anderson as disingenuous in his evaluation of plaintiff's qualifications. The defendant's claim of superior administrative experience on the part of Dr. Lawrence was also rejected as a pretext and an afterthought. When Pen-

nington and Anderson were selected by the defendant for appointment as Education Administrator I—Special Educational Needs, the emphasis placed on qualifications by the defendant centered on experience in development of programs dealing with the special educational needs of the disadvantaged. When Pennington refused appointment and the plaintiff was passed over in favor of Lawrence, the defendant's emphasis changed from the development and educational aspects of qualifications to an emphasis on general administrative skills and experience.

The district court's findings with regard to the plaintiff's public activities and the defendant's reaction to them also support the conclusion that the reasons given for plaintiff's rejection were a pretext. In 1974 the court found the plaintiff delivered a public address to Madison school administrators on sex discrimination in public education. The address occurred during the selection process for Special Education Administrator, and a copy of the newspaper coverage of that speech was in the file of the chairman of the selection panel. The chairman testified that the plaintiff's remarks were not "loyal" and reflected adversely on his perception of her.

The defendant's reasons for plaintiff's rejection pale in the light of the retaliatory conduct against her and appear pretextuous, as in effect the trial judge concluded.

---

**2.** The defendant erroneously asserts that the district court found that the plaintiff had established a *prima facie* case based upon statistics which revealed women as a group to be underrepresented and underutilized in the defendant's work force. The record reveals that the district court held that the plaintiff had established all the elements of a *prima facie* case of *sex discrimination* and *in addition* had shown, as required in some other circuits, that women constituted an "underrepresented and underutilized group at the Department of Public Instruction as they do in the administrative work force of the United States generally." Any suggestion that the district court based its holding upon such evidence is effectively belied by the court's subsequent statement, "Thus, she [the plaintiff] has proven a *prima facie* case under this additional higher standard *as well as under the standard the court chooses to apply*." (emphasis added).

**3.** The district court held that the defendant failed to rebut the plaintiff's *prima facie* case, stating: "The defendant's burden at this point is to prove not only that the reasons it points to for its decision existed in fact, but that they rationally suggested the action taken, and that the defendant actually relied on them." This is incorrect. It is the defendant's burden only to come forward with evidence of a legitimate reason for the action taken. The plaintiff, then, has the burden of proving that the reasons articulated by the defendant are a pretext, or, in the words of the district court, that the reasons did not exist or were not the reasons actually relied upon by the defendant. The proper analysis, therefore, is *not* that the defendant failed in its burden to rebut, but that the plaintiff successfully proved the defendant's reasons to be pretextuous.

## IV

■ Given its finding of unlawful discrimination and retaliation, the district court had the burden of fashioning some kind of make-whole relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). This court is limited in its review to determining whether the lower court abused its discretion in fashioning that remedy. *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1977). We cannot find that the injunctive relief commanding the defendant to appoint the plaintiff to the first vacancy occurring in its work force in the salary range and responsibility level at which she applied is in any way inappropriate. 42 U.S.C. § 2000e–5. The purpose of 42 U.S.C. § 2000e is to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination, *Albemarle Paper Co. v. Moody, supra*, and the defendant's contention that the trial judge exceeded his authority in entering that injunction is without merit.

The district court, however, went on to order that:

> The defendant is hereby ordered to expunge from its records the original and all copies and preliminary drafts of the April, 1974 joint evaluation of Dr. Sherkow and to deliver them at a reasonable time and place open to the public on at least ten (10) days' written notice, to the plaintiff for her personal destruction. This delivery is to be made personally by the State Superintendent. If Dr. Anderson's evaluation of the plaintiff from February, 1974 is not in the plaintiff's personnel file, the defendant is ordered to place it there.

Certainly expunging the joint evaluation which the court found was based on discriminatory motives is an appropriate remedy. The method ordered to be used to accomplish that proper result, however, we deem to be contrary to the purposes of the Equal Employment Opportunities Act, 42 U.S.C. § 2000e *et seq.* and an overstepping of the court's discretion.

Requiring the State Superintendent to appear in a public place and hand the discriminatory evaluation to the plaintiff for destruction is an act calculated not so much to make the plaintiff whole as to embarrass and to punish the State Superintendent. The portion of the district court order specifying the manner in which the joint evaluation is to be expunged is reversed.

## V

42 U.S.C. § 2000e–5(k) provides that, "the court . . . may allow the prevailing party . . . a reasonable attorney's fee . . . ." The district court awarded the plaintiff $21,165.00 in attorneys' fees, and the defendant says that sum is not reasonable. The defendant's objection to the attorneys' fees allowed by the court raises a single issue. Since the plaintiff prevailed in part but not as to her entire claim against the defendant, should her recovery of attorneys' fees and expenses be reduced accordingly? No contention is made that the time incurred or the hourly rates charged are excessive.

The question has been answered in *Northcross v. Board of Education*, 611 F.2d 624, 635–36 (6th Cir. 1979) with regard to fees under the parallel provisions of 42 U.S.C. § 1988, and we find the rationale of that case persuasive here.

■ Once the court has determined that the plaintiff has prevailed then the plaintiff is entitled to recover for all the time reasonably spent on a matter.

> The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith. There are numerous practical reasons why a court may not be permitted to dissect a lawsuit into 'issues and parts of issues as to which the plaintiffs did not prevail,' especially by decimating the total hours claimed with arbi-

trary percentages. Suffice it to say, however, that Congress has mandated that a prevailing party's attorney should be compensated 'as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter.' We know of no 'traditional' method of billing whereby an attorney offers a discount based upon his or her failure to prevail on 'issues or parts of issues.' Furthermore, it would hardly further our mandate to use the 'broadest and most flexible remedies available' to us to enforce the civil rights laws if we were so directly to discourage innovative and vigorous lawyering in a changing area of the law. That mandate is best served by encouraging attorneys to take the most advantageous position on their clients' behalf that is possible in good faith.

*Id.* at 636.

The judgment of the district court is affirmed in part and reversed in part, and the cause is remanded to modify the portions of the judgment dealing with expungement in accordance with the rulings of this opinion.