**Sheila REILLY, Plaintiff,**

v.

**Joseph CALIFANO, Secretary of the Department of Health, Education, and Welfare, Defendant.**

**No. 77 C 20.**

United States District Court, N. D. Illinois, E. D.

Jan. 27, 1981.

Diane Crawford Geraghty, Northwestern Legal Assistance Clinic, Roslyn C. Lieb, Chicago, Ill., for plaintiff.

Dan K. Webb, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

This action arises out of a claim by plaintiff based upon title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1978), as amended by the Equal Employment Act of 1972, 42 U.S.C. § 2000e–16(c) (1978). Plaintiff, a woman, contends that she was denied a promotion to the position of Chief of the Labor-Management Relations Branch of the United States Department of Health, Education, and Welfare ("HEW")[1] on the basis of her sex. Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") charging the defendant, Secretary of HEW,[2] with sex discrimination.

---

1. Since the filing of Reilly's complaint, HEW has been redesignated the United States Department of Health and Human Services. *See* 20 U.S.C. § 3508(a) (1978).

2. The named defendant is Joseph Califano who was Secretary of HEW at the time the instant case was filed. Richard Schweiker is presently the Secretary of HHS. The other defendants

Subsequently, plaintiff filed the instant case with this court. Plaintiff alleges that the defendant denied her the promotion on the basis of her sex. Plaintiff further alleges that her request for reimbursement for job related law school courses was denied by defendant in retaliation for the filing of the EEOC complaint. Defendant contends that plaintiff was not promoted to Chief of the Labor-Management Relations Branch because plaintiff is a "shy, retiring person" and defendant considered a "strong, outgoing" personality to be essential to the position. Defendant further contends that it denied plaintiff's training request because "extensive" training had been approved for plaintiff during the preceding eighteen months, the request totaled approximately one-third of the entire budget for such training, and plaintiff's training goals appeared to be law degree oriented which was not required for her position with HEW. The court concludes that plaintiff has not established that she was discharged because of her sex and enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

### FINDINGS OF FACT

1. Plaintiff is a woman.

2. Defendant is a federal agency with an office located in Chicago, Illinois.

3. In August 1976, plaintiff was employed by HEW as a Labor-Management Relations Specialist, GS–12. Plaintiff had held that position since 1974. Plaintiff reported directly to LeRoy Bradwish ("Bradwish"), Chief of the Labor-Management Relations Branch and often served as chief in Bradwish's absence.

4. In August 1976, Bradwish announced that he was resigning as chief effective September 1, 1976. Richard Friedman ("Friedman"), Regional Director of HEW, called a meeting in his office to discuss filling the vacancy. The meeting was attended by Friedman; Bradwish; George Bardahl ("Bardahl"), Assistant Regional Di-

rector for Administration and Management of HEW; George Holland ("Holland"), Deputy Regional Director of HEW; and Thomas Dodson ("Dodson"), Regional Personnel Officer of HEW. At the meeting, Friedman stressed the importance of filling the vacancy as quickly as possible with the best qualified person with a labor relations background who had experience in dealing with unions.

5. Plaintiff was detailed to the position as Acting Chief of the Labor-Management Relations Branch, GS–13, for the interim between Bradwish's resignation and the appointment of his replacement.

6. Dodson posted a vacancy announcement, No. 476–56, for the position of Chief of the Labor-Management Relations Branch, GS–13. The vacancy was posted nationwide and invited any qualified HEW or federal employee to apply for the position. In addition, the Regional Personnel Office of HEW requested the names of candidates from outside HEW from the United States Civil Service Commission's Federal Automated Career System list ("FACS list"). The FACS list is a register maintained by the United States Civil Service Commission ("the Commission") which lists job applicants who have registered with the Commission for referral to positions within their areas of interest. The FACS list includes information regarding the applicants' relevant job experience.

7. Twenty-three (23) persons applied for the position of Chief of the Labor-Management Relations Branch. Five (5) of these applicants met the minimum requirements set by a promotion panel. The FACS list was considered, but the entire list did not arrive in time to meet the closing date.

8. Dodson recommended a promotion panel to rank the applicants. This recommendation was approved by Friedman. Dodson developed a ranking system which consisted of factors under the general headings of "Experience," "Training," "Outside Activities," and "Awards and Citations." These general headings contained several

named in plaintiff's EEOC complaint have been          dismissed voluntarily from the instant case.

subcategories. The ranking system allotted each general heading a maximum number of points, but the subcategories were not numerically weighted. The maximum possible score was 100 points.

9. The promotion panel met in October 1976 and ranked the applicants. A promotion certificate dated October 8, 1976 was submitted to Friedman. The certificate listed the plaintiff and Sharon Bauer ("Bauer") as the best qualified candidates for the position of Chief of the Labor-Management Relations Branch. The plaintiff received 76 points and Bauer received 65 points out of the possible 100 points.

10. Friedman rejected both plaintiff and Bauer. Friedman then decided to reannounce the position at a lower grade, GS–12/13. Friedman testified that his reason for reannouncing the position at a lower grade level was to attract additional highly qualified candidates. Friedman testified that it was within his authority to refuse to select any of the candidates submitted on a promotion certificate. Friedman further testified that he previously had reannounced positions when it appeared that other more qualified candidates were available.

11. After being informed that she had not been chosen for the position, plaintiff sought pre-complaint counseling from the EEOC.

12. On November 1, 1976, the position was reannounced with the lower grade level as vacancy announcement No. 476–79. Applicants under the previous announcement automatically were considered as applicants for the reannounced position. Persons on the FACS list also were considered.

13. A second promotion panel was convened to rank the candidates. The ranking system was the same as the one used by the first promotion panel, except that numerical weights were assigned to the subcategories under the general heading of "Experience." On November 19, 1976, the promotion panel submitted a promotion certificate to Friedman. The certificate listed Thomas Artman ("Artman"), plaintiff, and Cynthia Soltes ("Soltes") as "highly qualified" for the position. Artman received 87 points, plaintiff received 73 points, and Soltes received 67 points.

14. On November 22, 1976, plaintiff was interviewed by Friedman and Holland concerning her application for the position. In addition, on November 24, 1976, both plaintiff and Soltes were interviewed by Dodson and Bardahl.

15. On November 23, 1976, plaintiff filed a formal complaint with the EEOC against the defendant, Friedman, Bardahl, and Dodson. Friedman and Bardahl were notified of the complaint on the same day that the complaint was filed.

16. On November 24, 1976, Friedman announced that Soltes had been selected for the position. Friedman testified that he felt that Soltes was the most qualified person for the position since she is an "outgoing and aggressive" individual with experience in dealing with unions.

17. On December 6, 1976, Dodson refused to approve plaintiff's request for funds for two labor law courses. Dodson previously had approved plaintiff's requests for funds for law school courses. Dodson testified that his reasons for not approving plaintiff's request were that extensive training had been approved for plaintiff during the preceding eighteen months, including three law school courses, that the request totaled approximately one-third of the entire budget for such training, and that plaintiff's training goal appeared to be law degree oriented which was not required for her position with HEW.

18. Friedman testified that, while plaintiff was a competent employee, he had observed plaintiff to be a shy, retiring person. Friedman also testified that he considered a strong, outgoing personality essential to the position. Friedman further testified that he felt that plaintiff would not perform well under the type of pressure generated by face-to-face union negotiations. In addition, Friedman testified that he considered Bauer to be "marginally qualified" for the position.

19. Friedman testified that as Regional Director of HEW he attempted to place more women and members of racial minorities in higher grade level positions with HEW. Friedman also testified that he had not achieved what he considered to be a representative balance of women and minority members by 1976. Friedman further testified that it was for this reason that he endeavored to fill the position of Chief of the Labor-Management Relations Branch with a qualified woman or minority member, if at all possible.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over this action under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1978), as amended by the Equal Employment Act of 1972, 42 U.S.C. § 2000e–16(c) (1978).

2. An employer-employee relationship existed between plaintiff and defendant during the relevant time period.

3. The defendant is an agency of the federal government within the meaning of 42 U.S.C. § 2000e–16(a) (1978) which provides, in pertinent part:

All personnel actions affecting employees or applicants for employment ... in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.

4. In a case alleging disparate treatment, the employer has treated some employees more favorably than others because of their race, color, religion, sex, or national origin and thus proof of discriminatory motive is critical. *Furnco Construction Corp.*

*v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977).

5. In a title VII case, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980); *Gaballah v. Johnson*, 629 F.2d 1191, 1200 (7th Cir. 1980). In a sex discrimination employment action where individual disparate treatment is alleged, it is incumbent upon the plaintiff to offer proof of the following propositions in order to establish a prima facie case:

(1) The plaintiff is a woman.

(2) The defendant had an employment vacancy which it sought to fill.

(3) The plaintiff possessed the qualifications to fill the vacancy and applied.

(4) The plaintiff was rejected.

(5) The defendant continued to seek other applicants or filled the vacancy with a male applicant.

*Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). It is not necessary to show that the plaintiff was as qualified as the successful applicant. *Davis v. Weidner*, 596 F.2d 726, 730 (7th Cir. 1979). In the instant case, plaintiff has satisfied all five of the elements. Thus, plaintiff has established a prima facie case of sex discrimination.

6. Since plaintiff has proved a prima facie case of sex discrimination, the burden of proof shifts to defendant to articulate some legitimate, nondiscriminatory reason for plaintiff's rejection. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980). This requirement is satisfied if the defendant produces evidence of

legitimate, nondiscriminatory reasons for rejecting the plaintiff. *Board of Trustees v. Sweeney*, 439 U.S. 24, 25 n.2, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978); *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980). In the instant case, defendant rejected plaintiff for the position because, although competent, she does not possess the sort of personality and demeanor necessary for the position. Thus, defendant has rebutted the prima facie case which was established by plaintiff.

7. The order of proof then imposes upon the plaintiff the burden of proving that the defendant's reasons were a pretext for discrimination prohibited by title VII, and that the plaintiff would have been hired but for this discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980). Thus, the ultimate burden of persuasion regarding the issue of discrimination remains with the plaintiff who must convince the court by a preponderance of the evidence that he or she has been the victim of discrimination. *Sherkow v. Wisconsin*, 630 F.2d 498, 502 (7th Cir. 1980). Evidence relevant to a showing of pretext includes the defendant's general policy and practice with regard to minority employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 97 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). In the instant case, plaintiff has failed to prove that defendant's reasons for rejecting her were a pretext for discrimination prohibited by title VII. Moreover, defendant attempted to recruit women for higher grade level positions and ultimately chose a woman for the position sought by plaintiff. Thus, plaintiff has not proved that the presumptively valid reason for her discharge was in fact a pretext for a discriminatory decision.

8. Section 704(a) of title VII provides, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e–3(a) (1978). The order and allocation of proof applied in title VII suits generally also is applied in cases alleging retaliation for participation in title VII grievance procedures. *See Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980), *appeal docketed*, No. 80–278 (U.S. Aug. 21, 1980); *Hochstadt v. Worchester Foundation*, 425 F.Supp. 318, 324 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976); *Aguirre v. Chula Vista Sanitary Service & Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir. 1976).

9. Section 704(a) requires a plaintiff to show: (1) statutorily protected participation; (2) adverse employment action; and (3) a causal connection between the two. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980), *appeal docketed*, No. 80–278 (U.S. Aug. 21, 1980). Therefore, as under *McDonnell Douglas Corp. v. Green*, 411 U.S. 722, 804, 97 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973), and its progeny, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant so rebuts the plaintiff's prima facie case, the plaintiff must then prove that the defendant's reasons were a pretext for discrimination prohibited by title VII. In the instant case, plaintiff has established a prima facie case of retaliation. The defendant, however, denied plaintiff's request for legitimate, nondiscriminatory reasons, including that extensive training funds had been approved for plaintiff shortly before this last request and that the request would have consumed a disproportionately large part of defendant's budget for such training. Plaintiff has failed to prove that the defendant's reasons were a pretext for discrimination prohibited by title VII. Thus, plaintiff has not proved that the presumptively valid reason for the defendant's refusal to reimburse her for the law school courses was in fact a pretext for retaliatory conduct in violation of section 704(a) of title VII.

## JUDGMENT

Accordingly, plaintiff's claims of employment discrimination based upon sex and retaliation are denied and judgment is entered for defendant.

It is so ordered.