Joseph A. TAYLOR, Plaintiff,

v.

UNITED STATES ARMY and M.P.W. Stone, Secretary of the Army, et al., Defendants.

No. 85 C 5115.

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1993.

Joseph A. Taylor, pro se.

Thomas P. Walsh, U.S. Atty's. Office, Chicago, IL, for U.S. Army, et al., and M.P.W. Stone.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Joseph Taylor (formerly known as Joseph Krejci, III) brings this action against the United States Army, Secretary of the Army, M.P.W. Stone, and former Secretary of the Army John Marsh, Jr., under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Before this court is defendants' motion for summary judgment. Federal subject matter jurisdiction is based on 28 U.S.C. § 1331. For the reasons stated below, defendants' motion for summary judgment is granted.

### FACTS

Joseph Taylor is a veteran and former employee of the U.S. Postal Inspection Service. In June 1977, Taylor left the Postal Service to accept a position with the U.S. Army Material Readiness Command in Rock Island, Illinois (the Rock Island Arsenal or RIA), in the field of quality assurance and reliability. Following a protracted dispute over pay, Taylor resigned from his position at the RIA on July 31, 1979. Subsequent to his resignation he attempted to regain employment with the Postal Inspection Service and with other federal agencies, without success. In May 1985 he filed this action, alleging that the RIA circulated false information about him to prospective employers, in an attempt to discriminate against him on the basis of age.

The assistant U.S. Attorney in charge of this case, Thomas Walsh, ascertained that what Taylor really wanted from this lawsuit was a job. Accordingly, and in the hope that the suit could be settled without actual litigation, he encouraged Taylor to apply for a number of federal positions. The suit was voluntarily dismissed, with leave to reinstate. Unfortunately, Taylor was unsuccessful in his pursuit of federal employment and the case reappeared, this time with various additional and later claims.

Taylor has amended his complaint a number of times throughout the course of the litigation. In its current form the complaint alleges that the RIA discriminated against Taylor on the basis of age when it failed to hire him for several open positions; that training documents were removed from his official personnel folder in reprisal for engaging in Equal Employment Opportunity (EEO) activity and because of age discrimination; and that his name was removed from the RIA's applicant supply file and documents were removed from his EEO case file in reprisal for engaging in EEO activity.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). In deciding a motion for summary judgment the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). Summary judgment is proper where the non-moving party fails to produce evidence sufficient to establish an element essential to that party's case and on which the party will bear the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989).

■ Taylor is entitled to *de novo* review of his discrimination claims in this court. The court notes, however, that the record before it on this motion is voluminous and well-developed. It includes personnel documents, affidavits, the transcript of sworn testimony before the United States Army Civilian Appellate Review Agency (USACARA) and the reports and opinions of both the USACARA and the Equal Employment Opportunity Commission (EEOC). These administrative materials are pertinent on summary judgment and, in some circumstances, may provide the basis for granting a summary judgment motion. *Nolan v. Cleland*, 686 F.2d 806 (9th Cir.1982); *United States v. Pent–R–Books, Inc.*, 538 F.2d 519, 527 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *Hackley v. Roudebush*, 520 F.2d 108 (D.C.Cir.1975); *Sperling v. United States*, 515 F.2d 465, 481–82 (3d Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976); See also *Powers v. Dole*, 782 F.2d 689, 693–94 (7th Cir.1986) (affirming a district court's grant of summary judgment in reliance upon an administrative record).

■ Summary judgment is infrequently an appropriate resolution in discrimination cases, where discriminatory intent is often proven by circumstantial evidence. However, even when issues of motive or intent are at stake, summary judgment is proper where the plaintiff presents no indications of motive and intent supportive of his position. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir. 1985). Further, in a summary judgment motion "a party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue." *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

## I. *Age Discrimination Claims*

■ Taylor contends that he was discriminated against on the basis of age when the Rock Island Arsenal failed to hire him for open positions for which he was qualified. Specifically, he alleges that the RIA discriminated against him when he was not selected for two quality assurance specialist GS–1910–09 positions in May 1987, and another quality assurance specialist position in November 1987. He contends that those hired were less qualified and under the age of forty.

■ The burden of proof formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), Title VII cases, applies in cases arising under the ADEA.

*See Ayala v. Mayfair Molded Products Corp.,* 831 F.2d 1314, 1318 (7th Cir.1987), citing *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1212 (7th Cir.1985). First, the plaintiff has the burden of proving by a preponderance of evidence a *prima facie* case of age discrimination. If plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. Should the defendant meet this burden, the plaintiff will then have the opportunity to prove by a preponderance of evidence that the reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94.

■ To establish a *prima facie* case of age discrimination for his failure to be hired, Taylor must prove that (1) he was a member of a protected class (age 40–70); (2) he was subject to an adverse action, *i.e.,* he was not hired; (3) he was qualified for the position; and (4) the position was filled by a person who was not a member of the protected class. *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989); *Parnell v. Stone,* 793 F.Supp. 742 (E.D.Mich.1992).

Taylor maintains that he was discriminated against when he was not selected for two quality assurance specialist GS–1910–09 positions at the RIA which were open in May 1987. The first two prongs of the *prima facie* case are met as Taylor was a member of a protected class and he was not hired for the positions at issue. However, Taylor cannot establish a *prima facie* case of age discrimination. First of all, Taylor admitted that he did not apply for these positions during the fact-finding conference held by the USACARA (Def.Exh. 1, § 8 at 43). This fact alone defeats Taylor's claim of age discrimination with respect to these positions. An individual cannot state a claim for discriminatory refusal to hire if he or she did not first *apply* for the job in question. Moreover, the fourth prong of the *prima facie* case is not met as both persons selected for the quality assurance specialist positions were over the age of 40 (*id.* at 46). Accordingly, Taylor has failed to establish a *prima*

*facie* case of age discrimination with regard to the positions filled in May 1987.

Taylor also contends that he was discriminated against on the basis of age when he was not selected for a quality assurance specialist position filled in November 1987. Yet, Gary Slavish, the man hired for the position, was 51 years old when he was hired. Consequently, Taylor cannot establish a *prima facie* case of age discrimination because the person hired was also a member of the protected class.

■ Even if Taylor could establish a *prima facie* case, the RIA has articulated legitimate, non-discriminatory reasons for their failure to hire him. Taylor's name was included in the Army's applicant supply file (ASF) as of May 21, 1987. Therefore, his name was on the ASF list of available GS–09's that was sent to the RIA for the position filled in November 1987 (*id.* at 66). However, Michael Downes, the selecting officer, chose to fill the position at the GS–11 level because the previous employee had been a GS–11 and Downes did not want to spend a lot of time training his replacement (*id.* at 103). Consequently, Downes chose a GS–11 from an Office of Personnel Management (OPM) list (*id.*). Taylor did not apply for the position through OPM and therefore was not on this list (*id.* at 105). Downes could not remember if he looked at the ASF GS–09 list at all, and indicated that if he had looked at it, he just glanced at it quickly because he wanted to hire someone at the GS–11 level (*id.* at 68). Downes stated that he hired Slavish because he felt he was the most qualified applicant (*id.* at 74). In light of the reasonableness of Downes' reasons for relying on the GS–11 list, as opposed to the GS–09 list, and the fact that he selected a person six years older than Taylor, this court finds no inference that Downes failed to consider Taylor because of his age. Accordingly, even if Taylor could establish a *prima facie* case, the RIA has articulated legitimate reasons for their decision and there is no indication that these were a pretext for discrimination.

Thus, while the court sympathizes with Taylor's unsuccessful attempts to regain employment with the federal government, there simply is no evidence of discrimination on the

basis of age. Taylor's allegations of age discrimination are conclusory and are not supported by the evidence.

## II. *Claims of Reprisal*

### A. *Removal of Documents From Official Personnel File (OPF)*

█ Taylor alleges that six training documents were removed from his OPF in reprisal for his engaging in EEO activity and/or because of age discrimination. However, there is no evidence to support such an inference. The Army does not dispute that Taylor completed the training courses at issue or that it is standard procedure to include forms indicating completion of training courses in an individual's OPF (Def.Exh. 1 at 5). In fact, two of the allegedly missing documents were found in Taylor's OPF during the USA-CARA investigation (*id.*). Taylor has no knowledge as to the date of the alleged removal of the four remaining training documents or the identity of the individuals who allegedly removed them (*id.* at 4). More importantly, he cannot recall whether he has ever actually seen the documents at issue in his OPF (*id.*). During the USACARA investigation, the Army requested that Taylor complete an SF–172 (*i.e.,* amendment to the personal qualifications statement) in order to document the courses for which the certificates were missing, and Taylor refused (*id.* at 6).

When an employee resigns from federal service, his OPF is to be sent to the National Personnel Records Center in St. Louis, Missouri, within 90 days of the effective date of resignation. Before releasing it, however, the agency must review the folder to remove all temporary records and to ensure regulatory compliance with regard to permanent records (Federal Personnel Manual Supplement 293–21). Taylor resigned from the RIA on July 31, 1979, and the RIA transferred his OPF to the Records Center. Taylor's OPF was removed from the Records Center and sent to the RIA on three occasions subsequent to his resignation: May 6, 1980, August 31, 1988, and February 12, 1990 (*id.* at 5). OPF request records indicate that his file was also requested by the U.S. Postal Service in Chicago, Illinois, on August 21,

1985 (*id.*). The reasons given for these requests were merely "temporary use," and the individuals who had access to Taylor's OPF were not indicated (*id.*). However, the USA-CARA analyzed the case files and concluded that there were legitimate, non-discriminatory reasons for the requests: the 1980 request was initiated by Army officials to correct personnel actions contained in Taylor's OPF; a need for information about Taylor's prior postal service may have generated the 1985 request; Taylor's August 1988 contact with an EEO counselor regarding this case generated the 1988 request; and EEO officials initiated the 1990 request in order to process Taylor's formal complaint (*id.*).

After a thorough investigation, the USA-CARA concluded that Taylor failed to establish a *prima facie* case of either age discrimination or reprisal (*id.* at 6). The EEOC came to the same conclusion (Def. Exh. 4 at 15). This court agrees with these findings. Taylor was only 38 years old when the RIA requested his OPF in 1980 and, therefore, any removal of documents at that time cannot be construed as age discrimination. While he was over forty at the time of the other requests, he has produced no evidence beyond mere speculation that suggests that the documents were removed because of his age, or that his OPF was handled differently from similarly situated persons outside his protected group. Moreover, he cannot say for sure whether the allegedly missing documents were ever on file in his OPF—if they were removed before or after he turned forty, or who removed them. Finally, he cannot establish that he was subject to an adverse action due to the alleged removal of these documents. All three of the positions for which he claims he was not selected because of age discrimination were filled by individuals over the age of forty. Taylor simply cannot establish that age played a factor in the removal of these documents.

█ Similarly, he cannot establish a *prima facie* case of reprisal. To establish a *prima facie* case of reprisal, Taylor must show that (1) he engaged in a statutorily protected activity; (2) the Army took adverse personnel action against him; and (3) a causal connection existed between the protected ac-

tivity and the adverse action. *Collins v. Illinois,* 830 F.2d 692, 702 (7th Cir.1987); *Reilly v. Califano,* 537 F.Supp. 349, 354 (N.D.Ill.1981). Even if the court were to accept Taylor's contention that the Army removed training documents in reprisal for his engaging in protected activity, he cannot establish a causal connection between his filing an EEO complaint and the alleged removal.

Taylor first engaged in EEO activity on January 6, 1988.[1] Yet he cannot show that the training documents were present in his OPF in 1988. Assuming that they were present in his OPF at one time, there is no evidence that they were removed subsequent to his EEO activity in 1988. Indeed, it is possible that they were removed prior to his EEO activity, or that they were never included in the OPF in the first place. Furthermore, since the Army did not have exclusive possession of Taylor's OPF from the time of his resignation, Taylor cannot demonstrate that the Army was responsible for the removal of these documents. Responsibility for the missing documents will not be imputed to the Army when it was not in exclusive possession of the OPF. This court finds no causal connection between Taylor's EEO activities and the removal of training documents. Taylor has failed to establish a *prima facie* case of reprisal.

**B.   *Close of the Applicant Supply File and Return of Taylor's application***

■ Taylor further contends that the RIA's applicant supply file (ASF) was closed and his application was returned to him in reprisal for his EEO activities. He maintains that his application was returned and the ASF closed in retaliation for a letter dated January 6, 1988, that he forwarded to the Secretary of the Army. The letter constitutes a protected activity. Therefore, Taylor has established the first prong of a *prima facie* case of reprisal. His personal qualifications statement, or SF–171, was also returned to him, thereby constituting an adverse employment action and meeting the second prong of the *prima facie* case. Yet,

again, Taylor cannot establish a *prima facie* case of discrimination because there is no evidence of a causal connection between Taylor's EEO activities and the return of his SF–171, or the closure of the ASF. Taylor cannot demonstrate that anyone involved in closing the ASF was aware of his letter when they made the decision to close the file, or that the decision was in any way influenced by his EEO activities.

The EEOC findings and recommended decision indicate that Taylor's January 6, 1988 letter to the Secretary of the Army was referred to one of the agency's installations in Virginia, which responded to Taylor on January 28, 1988 (Def.Exh. 4 at 13). Taylor was directed to contact an EEO office at the RIA, which he did, and on February 22, 1988, his complaint was transmitted to an EEO officer at the RIA (*id.* at 14). The EEOC found that there was no evidence that anyone involved in the decision to close the ASF was aware of Taylor's complaint (*id.*).

In fact, the employee who returned Taylor's SF–171 to him, Deborah Booker, testified that discussions about closing the ASF had been going on for at least one year and that the actual decision to close it was made in November or December 1987 (*id.* at 14–15). The record shows that the volume of applications received for inclusion in the ASF represented a tremendous workload for the Civilian Personnel Office and that few positions were actually filled from the ASF by the time vacancies became available (*id.* at 14). Booker testified that the decision was made to close the ASF because, in light of the work involved to maintain the ASF, it was of no benefit to the RIA (*id.*). Except for those positions for which there was a shortage of candidates, such as clerical, engineering, and at grades GS–11 and above, the ASF was closed (*id.*). The record reflects that 232 applications, including Taylor's, were returned (*id.* at 15). Moreover, Booker testified that she drafted a form letter to return the applications in late 1987, but that the process of closing the ASF file was held up until January 1988 because the employee

---

1.  No reprisal can be inferred from the August 25, 1985 request for Taylor's OPF by the U.S. Postal Service, since this request occurred prior to his EEO activity.

responsible for returning the applications was on vacation over the holidays (*id.*).

Consequently, the evidence indicates that while Taylor's SF–171 was not returned to him until January 18, 1988, the decision to return the SF–171's and close the ASF was made long before his EEO activity. Taylor has presented nothing beyond mere assertions of reprisal to controvert this evidence. The court finds that Taylor has not established a *prima facie* case of reprisal because there is no causal connection between Taylor's EEO activity and the return of his SF–171 and closure of the ASF. There is no evidence that the Civilian Personnel Office was aware of his EEO activity when it returned his SF–171. In fact, the evidence indicates that the decision to close the ASF was made long before Taylor made his complaint. Further, even if Taylor had established a *prima facie* case of reprisal, the Civilian Personnel Office has articulated legitimate, non-discriminatory reasons for its decision to close the ASF, namely, that it was a waste of resources, and Taylor has not produced any evidence to suggest that these reasons are pretextual.

### C. *Removal of Documents From Taylor's EEO File*

Finally, Taylor maintains that documents were removed from his EEO case file in reprisal for engaging in EEO activity. He contends that his SF–171, and three letters dated March 3, 1988, May 13, 1988 and September 5, 1988, were removed from his EEO file by the RIA Civilian Personnel Office and/or EEO officials in retaliation for his previous EEO activities.

The USACARA issued a report of investigation for Taylor's previous EEO complaints on June 6, 1990 (Def.Exh. 2 at 2). Two of the letters that Taylor alleges were removed from his EEO file, dated March 3, 1988 and May 13, 1988, are included in exhibit 1 of that report (*id.*). The SF–171 at issue is also in that report, at exhibit 25 (*id.*). Taylor

received a copy of this report, with its exhibits, on June 13, 1990 (*id.*).

As to the September 5, 1988 letter allegedly removed from Taylor's EEO file, RIA EEO officer Mary Moorehouse testified that it is not the type of letter which is usually included in the official case file (*id.*). This letter contained information requested by the RIA EEO to clarify Taylor's allegations and determine which of his allegations were timely (*id.*). This type of document is considered a "back-up" document and therefore is not deemed suitable for inclusion in the file retained by the investigator (Def.Exh. 2, § 19 at 7). Furthermore, Taylor submitted the September 5, 1988 letter to the EEOC administrative law judge during the hearing held in connection with his previously filed EEO complaints (Def.Exh. 2, § 19 at 15).

None of the evidence corroborates Taylor's allegations that these documents were removed in reprisal for his EEO activities. Three of the documents were considered during the USACARA's investigation and are attached as exhibits to their report. The other document was considered during the EEO hearing. Accordingly, there appears to be no injury. Taylor cannot establish a *prima facie* case of reprisal because he cannot show that he was subject to any kind of adverse action. He has not presented any evidence to suggest that he was treated differently than other complainants with regard to the September 5, 1988 letter. Moreover, the reasons given for not forwarding this letter to the investigator were legitimate and non-discriminatory and Taylor has not produced any evidence that suggests these reasons are pretextual. There is no basis for a finding of discrimination.[2]

### CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is granted. Taylor has failed to establish a *prima facie* case of discrimination with respect to any of his allegations. As noted

---

2. In light of our conclusion that there was no discrimination, the court finds that there is no basis for claiming the "tort of outrage." In order to establish the tort of outrage one must show that there was intentional, extreme and outrageous conduct that shocks the public conscience. The court finds nothing in this matter that rises to that level, even if it could be pursued against these defendants.

above, a bare contention that an issue of fact exists is not enough to survive summary judgment. A party must present some evidence to support his contentions. This Taylor has failed to do. Taylor has failed to present evidence sufficient to establish the elements of his case and on which he would bear the burden of proof at trial. While the court sympathizes with Taylor's plight, summary judgment is appropriate.