Dorothy GAUTREAUX, et al., Plaintiffs,

v.

Moon LANDRIEU, Secretary of Department of Housing and Urban Development, et al., Defendants.

Nos. 66 C 1459, 66 C 1460.

United States District Court,
N. D. Illinois, E. D.

June 30, 1981.

Alexander Polikoff, Howard A. Learner, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Robert Grossman, Jeffrey Jahns, Roan & Grossman, Chicago, Ill., for Illinois Housing Development Authority.

Calvin H. Hall, Gen. Counsel, Chicago Housing Authority, Earl L. Neal, Sp. Asst. Corp. Counsel, Chicago, Ill., Gary Ratner, Gen. Counsel, Dept. of Housing and Urban Development, Washington, D. C., Patrick W. O'Brien, Mayer, Brown & Platt, Chicago, Ill., for Chicago Housing Authority.

Richard Flando, Acting Regional Counsel, Dept. of Housing & Urban Development, Chicago, Ill., for HUD.

Stanley J. Garber, Corp. Counsel, Chicago, Ill., for City of Chicago.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge:

This matter comes before the court on plaintiffs' motion for an award of attorneys' fees against the Chicago Housing Authority (CHA). For the reasons stated below, the motion is granted in the amount of $375,375.

This case has had a protracted history. The complaint was filed on August 9, 1966, seeking a declaration that CHA was operating a racially discriminatory public housing system, an injunction against continued discrimination, and other relief the court deemed just and equitable. That resolution of these allegations was hard fought is evident from a citation to reported decisions: 265 F.Supp. 582 (N.D.Ill.1967); 296 F.Supp. 907 (N.D.Ill.1969); 436 F.2d 306 (7th Cir. 1970), cert. denied, 402 U.S. 922, 91 S.Ct. 1378, 28 L.Ed.2d 661 (1971); 342 F.Supp. 827 (N.D.Ill.1972), aff'd, 480 F.2d 210 (7th Cir. 1973); cert. denied, 414 U.S. 1144, 94 S.Ct. 895, 39 L.Ed.2d 98 (1974); 384 F.Supp. 37 (N.D.Ill.1974); 511 F.2d 82 (7th Cir. 1975); 498 F.Supp. 1072 (N.D.Ill.1980).

Contending that they have prevailed in their action, plaintiffs have moved for an award of attorneys' fees under the Civil Rights Attorneys' Fees Act of 1976, 42 U.S.C. § 1988 (the Act). The Act did not become effective until October 19, 1976. Yet plaintiffs maintain that § 1988 applies to this case from its inception because the case was pending when the Act became effective. Even so, plaintiffs are not seeking an award for the services provided by all the attorneys. The motion covers only the hours of Alexander Polikoff who has been lead counsel throughout.

Mr. Polikoff's affidavit states that he has spent at least 3,003 hours in this case. He considers that figure conservative and a considerable understatement of the actual number of hours spent. From this court's personal observations the figure, at least since 1976, is conservative in the extreme. Further, Mr. Polikoff has excluded time spent on matters in which plaintiffs did not prevail and time spent against parties other than CHA in this consolidated case. In an affidavit, an experienced attorney familiar with market and billing rates in Chicago states that a reasonable hourly rate for Mr. Polikoff is in the range of $125 to $175 per hour, in light of his skill, education and experience, and the complexity of this case. Thus, the lodestar fee here is between $375,375 and $525,525. Of course, the lodestar may be adjusted up or down, but plaintiffs submit that consideration of the relevant factors for such an adjustment would suggest an upward modification.

Both the CHA and the Department of Housing and Urban Development (HUD) have opposed the requested few award. CHA argues that the pendency of supplemental proceedings when the Act became effective cannot be a vehicle for obtaining

fees for the entire litigation. Additionally, CHA maintains that plaintiffs' motion should be denied as untimely filed. Further, CHA submits that plaintiffs cannot recover fees because they were not prevailing parties within the meaning of the Act. Finally, CHA contests the reasonableness of the proposed hourly rate. HUD only partially opposes plaintiffs' motion. The federal defendant argues, like CHA, that fees may only be awarded for work after October 19, 1976 because a final order had been entered long before that date. Also in agreement with CHA, HUD contends the hourly rate requested is excessive. With these objections, though, HUD does support the award of some fee.

The fundamental issue here is the applicability of the Act. There is no question that fees may be awarded in cases pending when the Act became effective. *Hutto v. Finney*, 437 U.S. 678, 694 n.23, 98 S.Ct. 2565, 2575 n.23, 57 L.Ed.2d 522 (1978); *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). The issue here is the definition of "pending" and whether this case comes within it.

Both CHA and HUD argue that a summary judgment order issued on July 1, 1969 and a number of other orders in the fall of 1969 finally decided all active issues in this case. At that time, CHA's liability was determined. All other issues before the court, the defendants submit, have been supplemental, concerning the appropriate remedy to enforce the judgment. Relying primarily on *Peacock v. Drew Mun. Separate Sch. Dist.*, 433 F.Supp. 1072 (N.D.Miss. 1977), *aff'd sub nom. Andrews v. Drew Mun. Separate Sch. Dist.*, 611 F.2d 1160 (5th Cir. 1980), and *Escamilla v. Santos*, 591 F.2d 1086 (5th Cir. 1979), CHA and HUD argue the existence of remedial procedures to enforce a judgment is insufficient to make a case "pending" on the date of enactment of the Act.

In *Peacock*, the plaintiffs had filed an action in February 1973 challenging defendant's policy prohibiting employment of unwed parents by the school district. In July 1973, a final judgment was entered declaring the policy unconstitutional. The judgment enjoined enforcement of the policy, granted back pay and other affirmative relief, and retained jurisdiction in the court to effectuate the judgment. Plaintiffs had requested attorneys' fees and in October 1973 the district court denied the request. The case was appealed and in February 1975, the court of appeals affirmed the final judgment, including denial of attorneys' fees. By May 1976, the Supreme Court had granted and then dismissed a petition for certiorari. Returning to the district court, the plaintiffs moved in August 1976 to depose the superintendent of the school district to determine back pay amounts. The deposition was permitted and plaintiffs then filed, in September 1976, a Request for Supplemental Relief seeking specific amounts of back pay. This request was pending when the Act became effective and plaintiffs renewed a request for attorneys' fees in November 1976. In December 1976, a consent order was entered resolving the back pay issue.

The *Peacock* court denied an attorneys' fees award. It was first noted that the Act should be given retroactive effect[1] in accordance with *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The court viewed *Bradley* as presenting a situation different from the one before it, however. In *Bradley*, a fee award was pending resolution on appeal when the statute providing availability of fees was enacted. In *Peacock*, on the other hand, the fee issue and all other "substantive" issues had been finally resolved before

1. With due respect to the court, this issue is not a matter of retroactivity. Rather, it involves the traditional rule that a court should apply the law that is in existence at the time it renders a decision, unless the statute or congressional intent dictates otherwise or unless the application would result in manifest injus-

tice. *Northcross v. Board of Educ.*, 611 F.2d 624, 633 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *see Wright v. Califano*, 603 F.2d 666, 672 n.17 (7th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

the effective date of the Act. The *Peacock* court interpreted *Bradley* and the legislative history to require application of the Act only in cases in which an "active issue" was pending on the enactment date.

An active issue was defined as "a substantive claim upon which a district court has not acted, either in the first instance or on remand, or a substantive claim whose disposition by the district court or Court of Appeals, either is on appeal or is appealable." 433 F.Supp. at 1075. Thus, the court reasoned that the pendency of supplemental proceedings to effectuate a final judgment is not within the definition of an "active issue". Because it considered the Request for Supplemental Relief and the eventual consent decree as "nothing more than provid[ing] for enforcement of defendant's previously established liability", the court held the case was not pending on the effective date of the Act and denied attorneys' fees.[2]

Plaintiffs respond that *Peacock* and defendant's other cases are distinguishable because all issues including entitlement to attorneys' fees had been resolved in final orders. Plaintiffs submit that if any aspect of a case is in active litigation on the effective date of the act and if no earlier order resolved all issues in the case, including fees, the entire case is "pending" for purposes of application of the Act. Their position is supported, plaintiffs argue, by three decisions of the Fifth Circuit after *Peacock.* *Taylor v. Sterrett,* 640 F.2d 663 (5th Cir. 1981); *Robinson v. Kimbrough,* 620 F.2d 468 (5th Cir. 1980); *Corpus v. Estelle,* 605 F.2d 175 (5th Cir.), *cert. denied sub nom. Estelle v. Corpus,* 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980).

In *Taylor,* the Fifth Circuit synthesized many of its decisions on this issue, including *Peacock* and *Corpus.* *Taylor* reaffirmed the rationale of *Peacock* that when all issues have been finally disposed of, including the attorneys' fees issue, before the effective date of the Act, supplemental proceedings to effectuate a final judgment are independent and do not make the entire case pending. The *Taylor* court noted that *Corpus* appeared to be to the contrary because "attorneys' fees were awarded for work done in the supplemental proceedings even though the initial case had been concluded in 1971." 640 F.2d at 669. However, this conflict was only apparent, according to *Taylor,* because the attorney's fees had not

2. The *Peacock* decision was affirmed per curiam, 611 F.2d 1160 (5th Cir. 1980), and its reasoning was followed in another Fifth Circuit case cited by CHA. In *Escamilla v. Santos,* 591 F.2d 1086 (5th Cir. 1979), the court concluded that a motion concerning the failure to comply with a consent decree is "in the nature of" a supplemental proceeding to effectuate a consent judgment and is not a pending active issue. 591 F.2d at 1088 & n.1. CHA has also briefly referred to other cases to support its position.

In *Gonzales v. Fairfax-Brewster Sch., Inc.,* 569 F.2d 1294 (4th Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 320 (1978), a denial of attorneys' fees had been affirmed (along with the grant of injunctive and damages relief) by the Supreme Court in August 1976. After the effective date of the Act, the plaintiffs moved for fees and costs in the district court. The Fourth Circuit affirmed denial because there had been a final judgment before October 1976 and no issue was pending. In *Henry v. Clarksdale Mun. Separate Sch. Dist.,* 579 F.2d 916 (5th Cir. 1978), an attorneys fee statute similar to the Act was at issue. The court noted that on date of enactment: all definitive or substantive orders of the district and appellate courts had been entered and were being complied with; no appeals were pending; no motion for attorneys' fees was pending; and the only order after enactment was entered upon plaintiffs' motion to require certain bus transportation. The court concluded these circumstances presented no active issue and, therefore, the case was not pending.

*David v. Travisono,* 621 F.2d 464 (1st Cir. 1980) is cited by contrast. There, a judgment order in April 1976 finally resolved all but one substantive issue. A request for appointment of an ombudsman was conditionally denied without prejudice at that time. The request was finally denied in that case in June 1977. Because that issue (even though characterized as slight and trivial) and a request for attorneys' fees were unresolved in October 1976, the case was pending for purposes of applicability of the Act. Finally, *Northcross v. Board of Educ.,* 611 F.2d 624 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), is cited because the court noted there may be a series of final orders that cut off the possibility of obtaining fees for earlier work in a drawn out school desegregation case. 611 F.2d at 635.

been requested until conclusion of the enforcement proceedings. *Id.* The *Taylor* court then concluded that the critical determination is "whether the attorneys' fees issue has been decided for the initial case; if this question has not been decided, then apparently this unresolved issue is sufficient to make the entire case pending." *Id.* Relying on this interpretation of *Corpus* and the fees issue, plaintiffs contend this case was pending because the issue of fees has not been decided for the "initial" case which determined the liability of CHA.

Plaintiffs also argue that the 1969 order, which CHA relies on as the final order rendering all subsequent proceedings supplemental, did not finally dispose of all issues. Instead plaintiffs contend the order contemplated a continuing judicial proceeding as did the order in *Bolden v. Pennsylvania State Police,* 491 F.Supp. 958 (E.D.Pa. 1980). In *Bolden,* a class action had been reduced to final judgment by a consent decree in June 1974 and defendants argued it was therefore not pending for purposes of applying the Act. The *Bolden* court rejected the argument because the decree expressly contemplated a continuing judicial proceeding (including an evidentiary hearing), the defendants were still operating under interim goals, and the judicial proceedings had not yet occurred. Thus, the court did not consider the case pending only in the technical sense that the court had continuing jurisdiction to enter necessary and desirable orders, but recognized it as pending for purposes of applying the Act. 491 F.Supp. 960–61. As in *Bolden,* plaintiffs contend that the 1969 order in this case expressly contemplated continuing judicial proceedings so the case was pending in October 1976.

■ Both aspects of plaintiffs' argument appear to be persuasively controlling.[3] However, the simple test enunciated by the Fifth Circuit in *Taylor* cannot be accepted for two reasons. First, if the crucial determination of "pending" is whether the fees issue has ever been resolved, then apparently nothing need actually be pending on the effective date of the Act. A party could move for an award of fees for the first time after passage of the Act when the case was otherwise dormant. Furthermore, if a case was in ongoing supplemental proceedings in October 1976, there is no basis for denying fees under the Act to a party who was unsuccessful under prior law, while at the same time granting fees to a party who never attempted to obtain fees under the prior law.

A second reason for rejecting the *Taylor* test is that the court inaccurately described the proceedings in *Corpus* when it attempted to harmonize the cases. When the *Corpus* court described the history of that case, it did refer to the second round of litigation as enforcing the first decision of the court of appeals. *Corpus v. Estelle,* 605 F.2d 175, 176 (5th Cir. 1979). The *Taylor* court considered those matters, which were pending in October 1976, as supplemental. However, an examination of the history of the *Corpus* litigation reveals that there was no final decision in the first court of appeals decision and the substantive claims were pending in October 1976. In *Novak v. Beto,* 453 F.2d 661 (5th Cir. 1971), the court reversed the district court's finding that the Texas Department of Corrections had an adequate alternative to justify its prohibition of legal assistance by one inmate to another. That reversal was not based on a determination that no adequate alternative existed, but rather on a conclusion that the defendants had not carried their burden in proving one. The defendants then partially changed their policy, but the plaintiffs returned to the district court seeking an injunction against a prohibition of prisoners providing legal assistance to one another. The district court issued a declaratory judgment and an injunction in 1975. The de-

---

3. The only case that could be directly binding here, *Bond v. Stanton,* 555 F.2d 172 (7th Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), is easily distinguishable on its facts. There, the attorneys' fees issue was on appeal when the Act was passed. In this case, this motion put the fee award at issue, obviously long after the effective date of the Act.

fendants appealed and while the case was pending there, the Act became effective. The district court was affirmed in 1977. *Corpus v. Estelle*, 551 F.2d 68 (5th Cir. 1977). Thus, contrary to the *Taylor* court description, there had been no final resolution of the plaintiffs' substantive claims until the 1977 decision; the merits of the case were pending on appeal in October 1976.

▮ Although the *Taylor* test is rejected as determinative, plaintiffs' other argument is persuasive. The defendants' premise, that the 1969 order was final and all other matters were supplemental, simply cannot be accepted. The final judgment order[4] directed CHA to file a modification of its tenant assignment plan which would be applicable until further order of the court. Thereafter, a more comprehensive plan was to be filed, following which the court had authority to enter further orders. *Gautreaux v. CHA*, 304 F.Supp. 736, 739, 740 (N.D.Ill.1969). Additionally, the order established that the results of the 1970 census would presumptively determine racial compositions of census tracts, but that the presumption was rebuttable by any party on motion. 304 F.Supp. at 737. The order also directed CHA not to build certain kinds of public housing unless with approval by court order. 304 F.Supp. at 739. Further, CHA was required to file various periodic reports with the court. Finally, in the order, the court retained jurisdiction for all purposes and listed several of them. Thus, even though this order was final in the sense that it was appealable and that it established liability, continuing judicial proceedings that would involve active controversy were expressly contemplated. On the authority of *Bolden* alone, this case was pending for purposes of applying the Act.[5] But the case also falls within the *Peacock*

definition of "active issue" because the continuing proceeding necessarily involves "substantive claims upon which the court has not acted." Therefore, the Act applies to the entire litigation.

▮ CHA also argues that plaintiffs have waived their right to fees by failing to move timely for an award. CHA contends that because § 1988 fees are assessed as costs, Rule 45 of the General Rules of this court applies. Applying that 10-day requirement, CHA submits that plaintiffs should have moved within 10 days of passage of the Act for all earlier work. Additionally, CHA asserts the 10-day requirement was not complied with on all subsequent matters. In response, plaintiffs argue that CHA mischaracterizes this case as a series of separate matters instead of recognizing it as continuous litigation. Thus, they submit Rule 45 does not apply to this motion which seeks an award *pendente lite*, before the case is fully and finally concluded.

Fee awards *pendente lite* are authorized under the Act when a party has prevailed on the merits of some of his claims. *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). In any event, this court has held that Rule 45 does not apply to a motion for fees under the Act. *Independent Voters of Illinois v. CHA*, No. 76 C 3683 (N.D.Ill. January 31, 1979) (Marshall, J.) Judge Marshall ruled that only the doctrine of laches applies when the issue of timeliness is raised. CHA has not argued any prejudice because of the timing of this motion. Clearly, then, plaintiffs have not waived their right to an award of fees.

▮ CHA next argues that plaintiffs are not entitled to fees for what it calls supplemental proceedings because plaintiffs did not prevail in those matters. Specifically,

---

4. The July 1969 decision granted summary judgment for plaintiffs and established CHA's liability. The opinion was not a final judgment order, though, because the court contemplated entering that 30 days thereafter. *Gautreaux v. CHA*, 296 F.Supp. 907, 914 (N.D.Ill.1969). The judgment order is reported at 304 F.Supp. 736 (N.D.Ill.1969).

5. The facts of this case weigh even heavier than in *Bolden* toward a determination of pendency. In *Bolden*, the contemplated proceedings had not yet occurred in 1980. Here, the parties are well aware that resort to the court has often been necessary. In fact, when the Act became effective the case was actively before Magistrate Jurco.

CHA notes that plaintiffs were unsuccessful in their attempt to have a receiver appointed by the court. In addition, CHA contends that although plaintiffs succeeded in defending Judge Austin's order appointing a Master, the hearings before the Master were fruitless because no order from the court resulted. Further, the Master had rejected plaintiffs' suggestion that a receiver be appointed. Finally, CHA submits that the only matter in which plaintiffs could arguably be considered as prevailing is the 1979 agreed order modifying the 1969 judgment to accept the CHA's housing plan. However, CHA argues that plaintiffs' action was not a material factor in bringing about CHA's decision to propose the housing plan and, therefore, they are not entitled to fees on the matter.

CHA's contentions must be rejected, however, because they are based on the continued mischaracterization of this case as many separate matters, including independent supplemental proceedings. Viewed as a whole, there is no question that plaintiffs have prevailed in this case. When that is the situation, a court's discretion is very narrow, because fees are to be awarded "almost as a matter of course." *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979). Furthermore, the court must "allow compensation for hours expended on unsuccessful research on litigation, unless the positions asserted are frivolous or in bad faith." *Sherkow v. State of Wisconsin*, 630 F.2d 498, 504 (7th Cir. 1980), quoting *Northcross v. Board of Educ.*, 611 F.2d 624, 635–36 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). There is no suggestion from CHA that plaintiffs' actions were frivolous or brought in bad faith; they clearly were not.

Indeed, even under the material factor test CHA relies on, the plaintiffs' claim for fees would survive. In *Morrison v. Ayoob*, 627 F.2d 669 (3d Cir. 1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), the court recognized that several factors in addition to a specific civil rights lawsuit may bring about compliance with the law by defendants. Thus, the court reasoned that the plaintiffs' action must be a material factor. Here, plaintiffs' pursuit of the proceedings before the Master, the 1979 order and the motion to appoint a receiver undoubtedly contributed in a substantial way to CHA starting to provide housing in compliance with the court's orders. Moreover, those pursuits were unquestionably a material factor in bringing about changes in defendants' conduct, especially since the motion for appointment of a receiver was denied without prejudice to renew. That motion was a substantial factor in compelling the CHA to show demonstrable progress. Therefore, plaintiffs' must be considered the prevailing party in the case as a whole.

■ In CHA's final contention, it briefly argues that plaintiffs' hourly rate is excessive. First, CHA submits that current market rates should not be used because plaintiffs had no right to fees until 1976 and then they waited five years to request them. Second, CHA submits that the hourly rate is excessive for the proceedings since 1974 because a disproportionate amount of time was spent for the results achieved. HUD also argues that the hourly rate should be reduced, but for a different reason. HUD maintains that because Mr. Polikoff is a salaried attorney for a not-for-profit, public interest organization and the fees are to be paid directly to the Illinois Division of the American Civil Liberties Union (ACLU) and the Business and Professional People for the Public Interest (BPI), the fee award should reflect only reimbursement to BPI and ACLU for the expenses they incurred, including salary, overhead and other costs. HUD relies on two cases for this argument: *Page v. Preisser*, 468 F.Supp. 399 (S.D.Iowa 1979); *Alsager v. District Court of Polk City, Iowa*, 447 F.Supp. 572 (S.D.Iowa 1977).

The resolution of these issues need not be lengthy. Other than HUD's two cases, apparently every other court has rejected the contention that when a salaried attorney of a not-for-profit organization provides the legal services, private attorney rates should not be used. *See, e. g., Copeland v. Mar-*

*shall*, 641 F.2d 880, 896–900 (D.C.Cir.1980); *Oldham v. Ehrlich*, 617 F.2d 163, 168–69 (8th Cir. 1980); *Palmigiano v. Garrahy*, 616 F.2d 598, 602 & n.6 (1st Cir.), *cert. denied*, 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980); *Dietrich v. Miller*, 494 F.Supp. 42, 44 (N.D.Ill.1980) (Bua, J.); *Custom v. Quern*, 482 F.Supp. 1000 (N.D.Ill.1980) (Marshall, J.); *Lackey v. Bowling*, 476 F.Supp. 1111, 1116–17 (N.D.Ill.1979) (Grady, J.). This court is convinced the majority of courts are correct.

CHA's objection to using current hourly market rates is also an issue that has often been rejected. *Hernandez v. Finley*, No. 74 C 3473, slip op. at 4 (N.D.Ill. Feb. 20, 1981); *Custom v. Quern*, 482 F.Supp. 1000 (N.D.Ill. 1980); *see Copeland v. Marshall*, 641 F.2d 880, 893 & n.23 (D.C.Cir.1980). These decisions are based on a valid consideration: throughout the litigation use of the money has been deprived. In an inflationary era, that is a significant loss which should be compensated in part by use of current rates. Thus, the prejudice, if any, resulting from an award of fees now "has inured to the plaintiffs' attorneys who have provided years of service without compensation in hand." *Northcross v. Board of Educ.*, 611 F.2d 624, 635 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Current market rates, therefore, shall be used.

 Only the final calculation of the award remains. An area of discretion is reserved for the court in determining the reasonable dollar amount. Plaintiffs have only submitted a range of reasonable fees and the factors enunciated in *Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980), may require an adjustment to the lodestar figure. As plaintiffs suggest, the *Muscare* factors do militate towards an upward adjustment. HUD, on the other hand, submits the court cannot ignore the financial reality of the CHA.

The financial limitations of a party cannot justify denial of a reasonable fee. *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497, 507 (7th Cir. 1980); *Witherspoon v. Sielaff*, 507 F.Supp. 667, 670 (N.D.Ill.1981). Yet because plaintiffs have submitted even their lowest figure as a reasonable rate, awarding that amount in recognition of CHA's limitations does not deny plaintiffs a reasonable fee. Unquestionably, $375,375 is a substantial amount of money that might otherwise be used to provide the relief on plaintiffs' substantive claims. However, because the plaintiffs are prevailing parties the court has virtually no discretion to deny an award. Additionally, the simple fact is, without the services of Mr. Polikoff and the other attorneys (for whom no fees were sought) the plaintiffs may never have obtained the housing that only now is beginning to materialize, fifteen years after the complaint was filed.

Accordingly, plaintiffs' motion for an award of attorneys' fees is granted in the amount of $375,375. Payment shall be made directly to the Illinois Division of the American Civil Liberties Union and Business and Professional People for the Public Interest.