Louis J. HARCEG, Gilbert Farrow, William J. Alter, Donald E. Mason, Jr., John M. Jansky, Kenneth E. Maicke, Corporal Ralph E. Connard, Corporal Thomas W. Gardner, Corporal Stanley F. Iwan, Lieutenant James A. McGarvie, Jr., Stephen L. Bjorkquist, Jimmy W. Bryant, Charles Heinzelmann, Gregory H. Guntharp, Robert J. Schenck, Charles Chostner, Andrew J. Gradowski, Lieutenant Emerson R. Krapf, Corporal Chester Iwan, Corporal Terrance Cashmore, Steve M. Semenek, Daniel J. Dunn, Bruce A. Scottberg, Richard Mulder, Richard J. Haynesworth, Charles J. Muttshall, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Thomas BROWN, Individually, and as Sheriff of Lake County, The County of Lake and Donald Krok as the Chairman of the Lake County Sheriff's Office Merit Commission, Defendants.

No. 80 C 6906.

United States District Court, N. D. Illinois, E. D.

Feb. 26, 1982.

selves and others similarly situated seeking declaratory, injunctive and monetary relief on the ground that Lake County Sheriff Thomas Brown ("Brown") had allegedly harassed and intimidated them for political reasons both before and after his election as Sheriff in November, 1978.[1] Plaintiffs also alleged that Donald Krok ("Krok"), Chairman of the Lake County Sheriff's Office Merit Commission, failed to provide hearings concerning Brown's alleged wrongful conduct as he was required to do and refused to act on a petition for relief that plaintiffs filed with the Merit Commission. Finally, plaintiffs alleged that Lake County itself unofficially sanctioned the policy, custom or practice of political discrimination of which plaintiffs complained within the meaning of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), so as to be subjected to liability under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983.

The usual adversarial process is further complicated in this case by the injection of the divergent political interests of the parties. The local political disputes that may in part have spawned this litigation have also carried over into the courtroom. Therefore, early in these proceedings, the Court granted a motion to appoint Mr. Miles J. Zaremski of the law firm of Fohrman, Lurie, Sklar & Simon as a special assistant state's attorney to represent Krok in light of the conflict of interest that would arise if Krok, Brown and the County were represented by the Lake County State's Attorney's Office in this litigation. *See Harceg v. Brown*, 512 F.Supp. at 790 (N.D.Ill.1981).[2] The Court subsequently

Louis S. Goldstein, Vitell, Greenfield & Johnson, Chicago, Ill., for plaintiffs.

David Weidenfeld, Asst. State's Atty., Waukegan, Ill., Miles J. Zaremski, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This civil rights action was filed in December, 1980, by twenty-eight Lake County, Illinois, deputy sheriffs on behalf of them-

1. Plaintiffs assert that defendants violated their rights under the first and fourteenth amendments and the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983, 1985. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331, 1343.

2. At that time the Court noted that:

> [d]uring the past year, Krok and Brown have had several public disagreements as reported in the press regarding allegations of unlawful political activity of certain persons in the

Sheriff's office, including the actions of Sheriff Brown himself.

> \* \* \* \* \* \*

> As a result of their differing views of the alleged political activity in the Sheriff's office, a considerable animosity and divergence of interest has built up between Krok and Brown. In the instant action, Krok maintains that he would file an answer to the complaint since, in his view, it adequately states a cause of action. The State's Attorney's Office, however, has filed a motion to

granted motions to appoint Messrs. Shayle P. Fox and Jeffrey A. Colby of the law firm of Fox & Grove as special state's attorneys to represent Brown when conflicts developed in his representation by the Lake County State's Attorney and to appoint Messrs. John C. Tucker and Sidney I. Schenkier of the law firm of Jenner & Block to represent the plaintiffs in connection with their defense of a counterclaim Brown filed against them alleging, *inter alia*, libel, slander and defamation. *See* Minute Orders dated July 20, 1981, and August 12, 1981, respectively. Mr. Fred L. Foreman ("Foreman"), Lake County State's Attorney, or his assistant Mr. David Weidenfeld, represented Lake County itself throughout this litigation.

Thus, when this case was filed in late 1980, it had all the ingredients necessary for the extended and lucrative employment of a dozen attorneys for many years.[3] The parties had long been at odds regarding the alleged politicization of the Lake County Sheriff's Office and efforts to resolve the dispute short of litigation had been unavailing. Nevertheless, counsel willingly acceded to the Court's suggestion that they attempt to resolve matters without a full-scale adversarial contest destined to be played out on all three levels of the federal judiciary. After months of intense negotiations by counsel for all parties concerned, the entire case was resolved by the entry of consent decrees between plaintiffs and each of the defendants on October 26, 1981, less than one year after it was filed. The decrees together provide the equitable relief that plaintiffs sought as well as monetary damages in the amount of $25,200.

The consent decree entered into between plaintiffs and Sheriff Brown provides that Brown, his successors and assigns will respect merit principles of public employment and will not attempt to chill the purpose or activities of the Lake County Sheriff's Office Merit Commission. The decree further provides that Brown will not condition any aspect of employment as a deputy sheriff upon an employee's past, present or future political support of any political party or candidate for public office, or lack of such support. The decree also establishes a grievance and arbitration procedure, as set forth in the agreement attached to and made a part of the decree, designed to resolve all disputes that might arise in connection with the employment of Lake County deputy sheriffs. The decree entered into between plaintiffs and Krok as Chairman of the Merit Commission provides that the Commission will conduct itself in accordance with recognized merit principles of public employment and, in particular, shall keep in force a rule prohibiting sheriff's deputies from participating in political activities. It further provides that the deputies shall have an opportunity to arbitrate decisions of the Commission after the Sheriff has brought charges before the Commission. The Commission is directed to act on the complaint by filing a written decision and report of its proceedings. The decree entered into between plaintiffs and Lake County provides that the County will recognize merit principles of public employment and that no political activity or financial contributions will be required of deputy sheriffs by any individual or organization in connection with his employment or otherwise. The County also agrees not to abolish the Merit Commission by any act or ordinance nor diminish its jurisdiction or effectiveness and to refrain from conditioning the employment of deputy sheriffs on past, present or future political affiliations. Finally, the decree provides that this Court

---

dismiss the complaint as to Krok for failure to state a claim upon which relief can be granted, apparently without any consultation with the purported client. Thus, even at this preliminary stage of these proceedings, there does not appear to be that identity of interest or cooperation between and among the defendants and the State's Attorney that would justify their joint representation.

3. One need only trace the tortured history of cases such as *Burns v. Elrod*, 509 F.2d 1133 (7th Cir. 1975), *affirmed*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), or *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D.Ill.1979), and subsequent opinions in that case, in order to appreciate the route this case might have taken.

retains jurisdiction over this matter for the purpose of determining the costs and attorneys' fees to be awarded and to enforce the decree or punish any violations of its provisions.

This matter is presently before the Court on the four petitions for attorneys' fees and costs contemplated by the decrees. Fee petitions have been filed by plaintiffs' attorney, Mr. Louis S. Goldstein, as well as by the three sets of special assistant state's attorneys representing Brown, Krok and the plaintiffs as counterdefendants. All the fee petitions are opposed, with varying degrees of intensity, by Lake County State's Attorney Foreman appearing on behalf of the County and its taxpayers.

The determination of the appropriate amount of attorneys' fees and costs to be awarded should not be made lightly or mechanically, particularly when, as here, public rather than private funds are involved. During the course of the proceedings in the case at bar, the Court stated both on the record and during *in camera* discussions with counsel for all parties concerned that it would look at any fee requests, particularly those to be filed by the special assistant state's attorneys, with great care since the taxpayers of Lake County would eventually have to pay the bill. For example, when the Fox & Grove law firm representing Brown requested that two additional attorneys be named as special assistant state's attorneys for the purpose of representing Brown, the Court granted the motion but admonished the attorneys already handling the case that it did not want the additional legal talent to be an excuse to increase unnecessarily the firm's billings to the County. At that time, the Court also indicated that it did not want the libel counterclaim filed on Brown's behalf to result in an increase in fees chargeable to the County since the counterclaim, at least on its face, appeared to be more politically motivated than it was related to Brown's official duties as Sheriff. *See* Transcript of Proceedings of August 21, 1981.

Yet, the Court is also aware that without the diligent efforts of all counsel involved in this matter, this case could have dragged on for months or years longer than it did, resulting in geometrically increasing legal fees to all counsel concerned to be paid by the taxpayers of Lake County. The lawyers involved in this case have conducted themselves, for the most part, in a highly professional manner, and they have been willing to work long hours including weekends or holidays in order to resolve this matter as swiftly and as economically as possible. Although there were some points at which agreement seemed beyond reach, the spirit of compromise existed throughout and ultimately prevailed. It is with these considerations in mind that we proceed to a discussion of the fees and costs to be awarded to plaintiffs' counsel and to the various special assistant state's attorneys.

### Attorney's Fees And Costs To The Prevailing Party Under 42 U.S.C. § 1988

█ Plaintiffs' counsel, Mr. Louis S. Goldstein ("Goldstein"), requests fees and costs pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1988, which provides that "[i]n any action or proceeding [under 42 U.S.C. §§ 1981–1983, 1985, 1986, or 2000d *et seq.*] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of its costs." Although section 1988 on its face leaves the award of fees to the discretion of the court, cases in this circuit make it clear that "a prevailing plaintiff should receive fees almost as a matter of course." *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979); *Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir. 1978). Even nominal damages will justify a fee award to the prevailing party, *Skoda v. Fontani*, 646 F.2d 1193 (7th Cir. 1981), although the nominal nature of the damages is a factor to be considered in determining the amount of the award. *Bonner v. Coughlan*, 657 F.2d 931, 934 (7th Cir. 1981); *Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir. 1979).

█ As a threshold matter, it is clear that a party may be considered to have prevailed within the meaning of section 1988 when rights are vindicated by the en-

try of a consent judgment rather than after a full trial on the merits. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *Dawson v. Pastrick*, 600 F.2d 70, 78 (7th Cir. 1979). *See also* S.Rep. No.94–1011, 94th Cong., 2d Sess., at 5 (1976), *reprinted* in [1976] U.S.Code Cong. & Admin.News 5908, 5912. In this case, plaintiffs have clearly prevailed through the entry of the consent decrees described earlier in this opinion. They have secured defendants' agreement to respect merit principles of public employment in the Lake County Sheriff's Office and their pledge not to condition any aspect of employment upon political support, sponsorship or affiliation. In addition, the consent decrees establish a mechanism to enforce the principles embodied therein and provide for continuing jurisdiction of this Court so as to assure that defendants' undertakings are not merely empty promises. The named plaintiffs in this action will also receive a total of approximately $25,000 in monetary damages under the terms of their settlement with Lake County. Thus, under any view of this litigation, Mr. Goldstein's clients must be considered the prevailing parties within the meaning of section 1988.

The Seventh Circuit has stated that the factors to be considered in determining an appropriate fee award under section 1988 are those contained in Disciplinary Rule 2–106 of the Code of Professional Responsibility adopted by the American Bar Association. *Bonner v. Coughlan*, 657 F.2d 931, 934 (7th Cir. 1981); *Muscare v. Quinn*, 614 F.2d 577, 579 (7th Cir. 1980); *Hampton v. Hanrahan*, 600 F.2d 600, 643 (7th Cir. 1979), *reversed in part and remanded*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Disciplinary Rule 2–106 provides in pertinent part as follows:

Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

All of these factors will not be relevant in a given case. The standard is essentially one of reasonableness and justice under all the circumstances. *Dawson v. Pastrick, supra*, 600 F.2d at 79–80; *Skoda v. Fontani*, 519 F.Supp. 309 (N.D.Ill.1981).

In the instant case, Goldstein, the only attorney representing plaintiffs herein, requests fees totalling $148,883.40 for 1102.84 hours of work at an hourly billing rate of $135 per hour.[4] In addition, Goldstein requests a total of $5,345.14 in out-of-pocket costs and the application of a multiplier of 2.5 to the lodestar rate which would bring the total award to $377,553.64. Lake County, as represented by State's Attorney Foreman, strenuously objects to the base amount of fees and costs requested as well as to the application of any multiplier. Defendants Brown and Krok expressly waived the right to contest plaintiffs' attorney's fees when they signed the consent judgments.

■ The Court has presided over this matter from its inception and has observed Mr. Goldstein conduct himself in a highly professional manner throughout the course of these often contentious proceedings. He has worked long hours that have detracted from the time he could spend on other

---

4. Goldstein originally requested $149,355.90 in fees but later amended his petition in light of a typographical error contained in the original petition.

professional matters.[5] The overlay of local politics that has been with this case from the very beginning further complicated an already difficult situation. The legal issues themselves were not overly complex or intricate, but the context in which they arose required a great deal of lawyerly skill and sensitivity in order to resolve the case short of trial. In the Court's view, plaintiffs received high quality legal representation throughout this litigation. As the record reflects, Mr. Goldstein graduated first in his class from Loyola University Law School in Chicago and has since lectured and written both locally and nationally on a variety of topics, with particular emphasis on complex civil litigation. His ability and experience certainly contributed to the just and relatively speedy resolution of this litigation.

The lodestar rate of $135 per hour that Goldstein requests is not unreasonable under the circumstances of this case or in view of the fees recently awarded in other cases in this district. *See, e.g., Gautreaux v. Landrieu*, 523 F.Supp. 684 (N.D.Ill.1981)(reasonable range between $125 and $175 per hour); *In re Cenco Incorporated Securities Litigation*, 519 F.Supp. 322 (N.D.Ill.1981) (reasonable range between $125 and $150 per hour); *Will v. United States*, 90 F.R.D. 336 (N.D.Ill.1981) (average fee of $121 per hour is reasonable); *In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245 (N.D.Ill. 1979) ($150 per hour is reasonable). Neither are the number of hours involved, for the most part, unreasonable or excessive in light of the delicate nature of the negotia-

tions required to resolve this case short of trial and the amount of time needed to continue the process of preparing for a trial on the merits in the event that settlement would not be possible.

Lake County contends, however, that the number of hours involved is excessive for several reasons. In its response to Goldstein's fee petition, the County contends that the 130 hours that Goldstein spent talking with his clients are excessive. In the Court's view, Goldstein could have made better use of group or committee meetings in discussing the case with the class of plaintiffs, all of whom were similarly situated with respect to the issues involved in this litigation. Although we recognize that it was necessary to spend some amount of time with each individual plaintiff in order to understand the factual differences in each individual setting to adequately prepare for trial in the event that settlement did not occur, the amount of time devoted to such tasks in the instant case appears to be excessive. Accordingly, the Court will deduct 65 hours from Goldstein's fee request at $135 an hour for a total of $8,775.00. The County also complains that Goldstein has included in his fee request time spent on matters beyond this lawsuit, such as interviewing parties and witnesses in other litigation involving the Lake County Sheriff's Office. The Court has reviewed the County's objections in this regard, however, and we are satisfied that the time attributed to these matters was related to the instant litigation.[6]

5. Indeed, the time and effort required to bring this matter to a conclusion was further exacerbated by the tactics of counsel for Brown and Krok who apparently refused to negotiate with Goldstein if counsel for the other was present and by the Lake County State's Attorney who, at one point, indicated that an agreement was near when, in fact, the proposed consent decree had never been discussed with his then client, Brown. Thus, Goldstein was forced to negotiate with each defense counsel separately so that, eventually, he was not only negotiating for results that would be acceptable to the plaintiffs but also to the defendants who chose not to be represented at a particular negotiation session.

6. For example, the County complains that Goldstein spent time interviewing Mary Guillen who is a plaintiff in an unrelated wrongful discharge case and is represented therein by Goldstein. However, Goldstein asserts, that he has only sought compensation herein for the time he spent interviewing Ms. Guillen as a potential witness in the case at bar. Goldstein has also properly included in his fee petition time spent reviewing other litigation involving the Sheriff's office for its bearing on this case. Such time is not excessive. The County's objections with regard to Goldstein's contacts with Drew Pranke are unfounded since Pranke was an unnamed plaintiff in this case who actually received part of the money settlement. Goldstein has corrected one typographical er-

The Court also agrees with the County that a multiplier would be inappropriate in this case. Goldstein himself has proposed that the Court award either the lodestar rate or the lodestar rate including a multiplier. As the court noted in *Will v. United States*, 90 F.R.D. 336, 345 (N.D.Ill.1981), "[t]he most significant factors for determining whether a multiplier is warranted concern the risks involved in the particular litigation. . . ." In making this determination, the factual and legal complexity of the case, the probability of defendant's liability, the number of hours risked without guarantee of remuneration, and any delay in the receipt of payment for services rendered are among the factors that should be considered. *Id. See also Lindy Brothers Builders, Inc. v. American Radiator*, 540 F.2d 102, 117 (3d Cir. 1976). As noted earlier in this opinion, the legal theories invoked in the effort to establish defendants' liability herein are not particularly complex or novel, especially in light of the many recent cases dealing with political hiring, firing and conditions of employment. *See, e.g., Burns v. Elrod*, 509 F.2d 1133 (7th Cir. 1975), *affirmed*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D.Ill.1979). Moreover, settlement discussions had been proceeding in this case since very early in the process so that the risk that plaintiffs' counsel would not be compensated at all was minimized. As settlement became more likely, the risk of uncompensated service was further diminished. There also has been only a slight delay in the receipt of payment, particularly when this case is compared to the *Gautreaux* litigation in which counsel waited 15 years to receive court awarded fees or the six years between filing and fee award in the *Cenco* litigation. *See Gautreaux v. Landrieu*, 523 F.Supp. 684 (N.D.Ill.1981); *In re Cenco Incorporated Securities Litigation*, 519 F.Supp. 322 (N.D.Ill.1981). In the Court's view, counsel will receive ample and fair compensation for his efforts on plaintiffs' behalf in this case by the application of the lodestar rate without a multiplier.

Accordingly, the Court accepts Goldstein's alternative formulation that "if the Court does not see fit to apply the requested multiplier, plaintiffs request that petitioners [sic] be granted their full fees at current hourly rates."

The Court also finds the unitemized list of costs submitted by Goldstein to be inadequate at this time. In sharp contrast to his fee petition, which contains extensive itemization of the activity performed during the documented time period, the bill of costs is merely a listing of the payee, the date, and amount paid. The Court is unable to discern the relationship to this litigation of most of the costs for which Goldstein seeks reimbursement. Of particular interest are two payments to the law firm of Jenner & Block totalling almost $1,500 and dated August 11 and October 24, 1981, respectively. As previously noted, on August 21, 1981, this Court appointed two attorneys from Jenner & Block as special assistant state's attorneys to represent the plaintiffs in their defense of a libel counterclaim filed by Brown. It is unclear whether the payments to Jenner & Block are in connection with that representation or in some other regard. In either case, the entries require some explanations. Goldstein may file a supplemental itemized bill of costs with appropriate descriptions of the amounts expended so that the Court may make an informed ruling in this regard.

Accordingly, the Court will award Goldstein $140,108.40 in attorney's fees for his representation of plaintiffs herein. The Court will consider Goldstein's petition for costs if supplementary itemization is filed within ten days.

### Compensation for the Special Assistant State's Attorneys

As set forth at the outset of this opinion, the Court appointed special assistant state's attorneys to represent two of the three defendants in this action as well as the plaintiffs as counterdefendants on the counterclaims filed by Brown in view of the

ror noted by the County and amended his fee

petition accordingly.

conflicts of interest that had developed or would foreseeably develop if the Lake County State's Attorney undertook the representation of all county employees in connection with this litigation. Accordingly, Mr. Miles Zaremski of Fohrman, Lurie, Sklar & Simon [7] was appointed to represent Krok; Messrs. Shayle Fox and Jeffrey Colby of Fox & Grove were appointed to represent Brown; [8] and Messrs. John Tucker and Sidney Schenkier of Jenner & Block were appointed to represent the plaintiffs as counterdefendants.

Preliminarily, the Court notes that there is virtually no authority dealing with the appropriate standards for determining the compensation of special assistant state's attorneys appointed by the court in a conflict of interest situation. In the only Illinois case that is even remotely on point, the Illinois Appellate Court stated that the trial court has broad discretion to determine a reasonable rate of compensation that places the special assistant on the same footing as the elected state's attorney in whose stead he acts while also taking into account the higher overhead expenses of the private attorney specially representing the public official. *People ex rel. Barrett v. Board of Commissioners of Cook County*, 11 Ill. App.3d 666, 297 N.E.2d 307 (1st Dist. 1973). In determining the reasonableness of the fees and costs sought by a special assistant, the factors listed in Disciplinary Rule 2–106 of the Code of Professional Responsibility adopted by the American Bar Association also provide some guidance as they do in other contexts in which attorney's fees are sought. But when a member of the bar is appointed as a special assistant state's attorney or attorney general, he cannot expect to be compensated as fully in all respects as he might be in a private context. As a special assistant, he acts in a semi-public capacity and he should only be reimbursed for those fees and costs that are directly attributable to his representation of

his client in such a public capacity. Fees and costs that might be attributed to the representation of the public official in a personal capacity should be disallowed. In determining a reasonable fee for a special assistant, the Court is aware that the members of the bar do not undertake such representation *pro bono publico*, but when public funds are involved it is preferable to err on the fiscally conservative side than to be excessively generous with the public pocketbook.

In the case at bar, Lake County agreed, as part of the consent decrees entered in this matter, that its opposition to the fee petitions of Zaremski and the attorneys from Jenner & Block would be limited to the hours and rates charged.[9] Nevertheless, the memoranda filed by the County in opposition to these fee petitions go far beyond a mere analysis of the hours and rates involved. Indeed, the memoranda directed at Zaremski's fee request contains a vitriolic attack on the quality of his representation of Krok and his competence as an attorney in not raising certain defenses. The memoranda concludes that Zaremski's request for approximately $41,000 in fees and $8,000 in costs is excessive and unreasonable in light of his participation in this case. The County also strenuously objects to Jenner & Block's participation in this case and questions whether they earned even the minimal fees they request, even though only one hour of a partner's time was billed on the case. By contrast, Lake County State's Attorney Foreman only offers token opposition to the roughly $52,000 in fees and costs sought by attorneys from Fox & Grove in connection with their representation of Sheriff Brown.

In the Court's view, the double standard Foreman applies in his opposition to the fee petitions of the special assistants on the County's behalf, can only be explained by the vagaries of local politics as opposed to settled legal principles, and it is indicative

---

**7.** Zaremski was assisted by Mr. Paul Cottrell of the same firm.

**8.** They were assisted by Steven Cohn and Marty Schwartz also of Fox & Grove.

**9.** The County had previously been apprised of and apparently agreed to the billing rate to be charged by Fox & Grove in connection with their representation of Brown.

of Foreman's and the County's attitudes throughout these proceedings. Moreover, Foreman's attack on the participation of Zaremski and the attorneys from Jenner & Block directly contravenes the County's undertaking to limit its opposition to the fee petitions to the rates and hours charged as manifested in the agreement made a part of the consent decrees. Although the Court will not re-examine the appointment of the various special assistants, it will inquire into the nature of the services rendered and the rates and hours billed for such services in determining a reasonable reimbursement for the special assistants in accordance with the principles set forth above.

John Tucker, an experienced and highly regarded trial attorney, and Sidney Schenkier of Jenner & Block request a total of $1,509 in attorneys' fees for their representation of the plaintiffs in connection with their defense of the counterclaims filed against them by Brown. This represents a total of 18.75 hours expended on this case, of which only one hour is attributable to work done by Tucker, a partner, billed at the rate of $150 per hour. The remaining 17.75 hours were billed by Schenkier, an associate, at the rate of $76 per hour. There is simply no merit to the County's suggestion that the fees requested by these attorneys are unreasonable or excessive in light of their limited participation in this matter. Tucker and Schenkier did not duplicate the work of plaintiffs' primary counsel, as the County charges, but rather, they limited their involvement to those matters encompassed within the scope of their appointment in connection with Brown's counterclaim. Although Tucker's billing rate of $150 per hour is somewhat higher than the rates of the other attorneys involved in this case, it is not out-of-line with the rates charged by attorneys of his stature in large Chicago law firms today. Moreover, in an effort to keep costs down, Tucker expended the absolute minimum amount of time necessary to represent the plaintiff counterde-

fendants. The brunt of the work was done by Schenkier at half Tucker's hourly rate. Foreman's objections in this regard are thus petty at best.

Accordingly, Jenner & Block's petition for $1,509 in fees will be allowed in its entirety.

For his representation of defendant Krok, Zaremski requests $41,262.50 in fees generated by himself and one associate together with $7,820.18 in costs including the work of two paralegals, for a total of $49,082.68. Zaremski's billing rate averages $112.50 for in-court and out-of-court time, his associate averages $87.50,[10] and the paralegals' hours are billed at $45 per hour. Zaremski also requests interest at the rate of six percent per annum from the date of the award.

As we stated previously, there is a considerable amount of rancor between Zaremski, who has represented Krok as a special assistant in several other matters in state court, and Foreman who, as Lake County State's Attorney, has forcefully, though unsuccessfully, opposed Zaremski's appointment in each case in which such a motion was made. In the instant case, Foreman, on behalf of the County, contends that Zaremski expended many more hours than were actually necessary to properly represent Krok in this matter. Indeed, Foreman suggests that if the Court would have ruled favorably on a motion to dismiss Krok from this action, which Foreman filed purportedly on Krok's behalf before Zaremski was appointed, most of Zaremski's time and effort would have been unnecessary. Whatever the merits of the motion to dismiss, the Court will not allow the parties to relitigate that issue at this late date. The fact remains that it was filed without the knowledge or consent of Krok, as the purported client, who preferred to answer the complaint and defend this case on the merits. It was just this state of affairs and the conflict of interest arising from Foreman's representation of Krok together with the

10. Zaremski's actual billing rate is $125 for 23.2 hours of in-court time and $100 for 355.7 hours of out-of-court time. The hours of his associate, Paul Cottrell, break down to $95 for 3.0 hours of in-court time and $80 for 30.5 hours of out-of-court time. The two paralegals account for a total of 138.6 hours at $45 per hour.

other defendants, that led the Court to appoint Zaremski in the first place. Zaremski provided Krok with the kind of representation Krok desired, within the bounds of the law, which is all that can be expected of him. *See* Letters from Krok to Zaremski dated August 21 and November 11, 1981, attached as Exhibits A(1) and A(2) to Zaremski's petition.

In the Court's view, Zaremski's rates and hours are, for the most part, neither excessive nor unreasonable within the context of this case. A review of Zaremski's time sheets reveals that he and his associate spent a substantial amount of time reacting and responding to matters interposed by the other defendants that were later withdrawn or abandoned by the movants. For example, Zaremski and his associate spent many hours early in these proceedings responding to the County's appeal of Zaremski's appointment in this case. That appeal was largely abandoned as settlement of this case became more likely, and it was eventually withdrawn as part of the settlement that did occur. But while the appeal was viable, Zaremski had an obligation to oppose it to the best of his ability on Krok's behalf.

Similarly, a considerable amount of time was spent in connection with Brown's motion to vacate the consent decrees, which was eventually withdrawn, and in redrafting and renegotiating the decrees after Brown became more involved in the settlement process. Thus, many of the hours of work that Foreman now maintains are excessive were necessitated by actions taken by the County or Brown that, for whatever reason, were later not pursued. Zaremski was obligated to respond to such matters on the assumption that they were undertaken on the merits and in good faith. In sum, we conclude that Zaremski's billing rates are reasonable in this locale considering his skill and experience, as are those of his associate and the paralegals, and that the number of hours devoted to the activities described above is not excessive in the context of this case. Reimbursement at this rate would be consistent with the factors identified in Disciplinary Rule 2–106 of the ABA Code of Professional Responsibility and the standard enunciated in *People ex rel. Barrett v. Board of Commissioners of Cook County, supra,* designed to assure compensation commensurate with the special assistant's assumption of a public function with due consideration for his overhead expenses.

In our view, however, the 25 hours that Zaremski spent researching and filing his fee petition is not fully reimbursable under the circumstances of this case. As we noted earlier, there is a conspicuous lack of authority dealing with compensation of special assistant state's attorneys appointed by the Court in conflict of interest situations. There is only one Illinois case on point and the many cases dealing with attorneys' fees in other contexts are helpful only by analogy. Although it is clear that the time an attorney spends litigating his entitlement to fees is properly reimbursable under the prevailing rule in this and other circuits, *see, e.g., Bond v. Stanton,* 630 F.2d 1231, 1235 (7th Cir. 1980), the general standard of reasonableness still applies. In the instant case, 25 hours is an unreasonable and excessive amount of time considering the depth and nature of the legal research required together with the simple organizational tasks necessary to establish entitlement to fees and costs in this case.

The Court notes that the other special assistants required substantially less time and effort to research and prepare their fee petitions. The attorneys at Jenner & Block expended only 4.25 hours in the preparation of their fee petition and their reply to the County's opposition to the fees requested. The attorneys at Fox & Grove expended approximately 16.75 hours in preparing their petition and responding to the County's objections. In the Court's view, 12 hours is the maximum amount of attorney's time necessary to prepare a fee petition in this case and to respond to the County's opposition. Accordingly, the Court will dis-

allow 13 hours at $100 per hour from Zaremski's petition.[11]

The Court also declines Zaremski's request for interest computed at six percent per annum from the date of this opinion. This case was actively litigated for less than one year, and the fees and costs will be awarded just over one year from the date of filing. There is no indication that the County will drag its feet in paying Zaremski his due. Accordingly, there is no need to compensate Zaremski with interest from the date of the award. The Court will also deduct from Zaremski's bill of costs $118.40 in unitemized "transportation expenses" and $43.40 listed as payment on a "bill from Waukegan lawyer re: civil rights litigation" since these items are not described sufficiently to enable the Court to determine their relation to this litigation. Zaremski may file, if he wishes, a supplemental petition limited to these items along with an appropriate explanation of their connection to this case.

Accordingly, the Court will award Zaremski $39,962.50 in fees and $7,658.38 in costs for a total of $47,620.88.

The third set of special assistant state's attorneys, Shayle Fox and Jeffrey Colby together with their associates at the firm of Fox & Grove, seek $50,300.00 in attorneys' fees and $1,793.52 in costs for a total of $52,093.52. The County's opposition to Fox & Grove's fee request is relatively mild compared to its vituperative responses to the fee petitions of the other special assistants. During the course of their representation of Brown, Fox & Grove apparently gave him a monthly breakdown of their billing rates and the hours expended on the case without any objections being raised. Nevertheless, the County does object to several items listed in Fox & Grove's petition for fees, including: (1) 27.75 hours spent researching fifth amendment issues in connection with the anticipated depositions of various deputy sheriffs; (2) 2.50 hours

spent drafting press releases for Brown; and (3) $63.06 in luncheon expenses.

In the Court's view, the $2,358.75 sought for almost 28 hours of research on the fifth amendment issue is unreasonable and excessive in light of the stated purpose of that research. Fox & Grove maintains that the research was necessary in order to determine the extent to which the deputy sheriffs, who might be deposed in connection with the plaintiffs' case, could claim the privilege against self-incrimination during their depositions, which never actually took place, or at an eventual trial on the merits. Although the research into the fifth amendment issue was relevant to the limited discovery in this case and to Brown's overall defense, the number of hours of research is excessive in light of the rather tangential nature of the fifth amendment issue as presented at that time. Accordingly, the Court will allow only half the time billed and decrease the amount of the reimbursable fees for such work to $1,179.37.

We must also agree with the County that the drafting of press releases for Sheriff Brown does not fall within the ambit of the appointment of the special assistant state's attorneys charged with representing Brown in this civil rights action. In response to the County's objections, Fox & Grove argues that at the time the releases were drafted there had been a great deal of media attention focused on the case that required a response. That may be true, but there is nothing that dictates that the special assistant state's attorneys appointed to represent Brown in connection with the pending litigation must be the ones to draft the press releases demanded by the situation. Sheriff Brown surely has people on his own staff capable of drafting a press release of such a nature or there are assuredly other County employees capable of such a task. There is no need to further burden Lake County taxpayers by paying attorneys fees for persons outside the public sector to perform a service that could be

---

11. Zaremski's concern with his fees apparently arose fairly early in this case. His time sheets reveal that as early as May and June of 1981, less than six months after this case was filed, Zaremski and his associate began looking into the attorneys' fees question and he began preparing an interim fee petition in July, 1981, although no interim petition was ever filed.

accomplished equally well and far more economically by County employees.

Fox & Grove contend, however, that they drafted the press releases to insure that they complied with the standards for extra-judicial comments on pending litigation set forth in Local Rule 40 of the General Rules for the United States District Court for the Northern District of Illinois. Local Rule 40, however, only applies to statements made by "a lawyer or law firm associated with a civil action" and not to statements made by the litigants themselves. Thus, if Brown wished to make a statement, he could have done so without the participation of his attorneys and the rule apparently would not have applied.[12]

In the present economic climate, the Court is also unwilling to allow private attorneys to feed at the public trough, so to speak, any more than is absolutely necessary and thus will disallow the $63.06 claimed for luncheon expenses. The Court does not doubt that business was discussed over lunch to some degree. But it could also have been discussed in another setting in which the County would not be forced to carry the added burden of feeding the special assistants, who could have eaten just as well on their own time and at their own cost.

Finally, the Court, on its own initiative, will deduct that portion of the fees requested that are attributable to the counterclaim filed on Brown's behalf, amounting to roughly 20.75 hours by our calculation, and will disallow all but 12 hours of the time spent on the fee petition. At the time the counterclaim was filed, the Court indicated that the allegations of libel and slander contained therein appeared to be of a personal nature that went beyond the scope of the appointment of the special assistant state's attorneys charged with representing Brown in his official capacity with respect to plaintiffs' civil rights claims. *See* Transcript of Proceeds of August 21, 1981. The counterclaim appears to have been interposed for political or tactical reasons rather than as necessary to or in furtherance of the Sheriff's defense of the underlying suit on its merits. Eventually, the counterclaim was withdrawn as part of Brown's settlement with the plaintiffs. In the Court's view, it would be inappropriate to make the County pay for legal services rendered on Brown's behalf that are fairly characterized as personal or political in nature rather than directly related to his defense of a suit against him in his official capacity for which the special assistants were initially appointed. Therefore, the Court will deduct 1.25 hours billed at $95.00 per hour and 19.50 hours billed at $85.00 per hour attributable to work done on the counterclaim for a total of $1,776.25. For the reasons set forth earlier in this opinion in connection with Zaremski's fee petition, the Court will also deduct 4.75 hours of the roughly 16.75 hours spent in preparing Fox & Grove's fee petitions as excessive.

Accordingly, the Court will award Fox & Grove $46,723.13 in fees and $1,730.46 in costs for a total of $48,453.59.

## CONCLUSION

As is apparent from the foregoing, it is our view that a court should not merely rubber stamp fee requests filed by attorneys practicing before it. As a practical matter, however, courts may on occasion scrutinize with less intensity requests for fees and costs in major corporate litigation, especially when counsel for the losing party offers little or no opposition to the amount

---

12. Rule 40 was apparently drafted very narrowly in light of the Court's holding in *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976), striking down a much broader predecessor of the current rule. Rule 40 is thus limited to four types of statements that might be made by lawyers or law firms involved in a particular case, dissemination of which "will pose a serious and immi- nent threat of interference with the fair administration of justice," in line with the Seventh Circuit's statement at page 251 of its opinion in *Chicago Council of Lawyers* to the effect that such a rule would pass constitutional muster. There is no indication in the record before us at this time as to which of the four categories the Sheriff's statements would fit into even if the rule was applicable.

requested or the rate charged. But the case at bar does not involve two large corporations embroiled in a business dispute, the cost of which both may consider as a requisite business expense. Rather, it involves the disposition of public funds by a public body politic in connection with litigation spawned by an inter-party political dispute. In such a situation, the Court has an even greater obligation to carefully scrutinize the fees requested by private attorneys. This scrutiny by the Court is particularly appropriate in today's economy when most local governments are struggling to meet their fiscal responsibilities with limited financial resources and unabated inflation.

Accordingly, the County of Lake is hereby ordered to pay to the following persons and law firms the following amounts in fees and costs:

| | |
|---|---|
| Louis S. Goldstein | $140,108.40 |
| John Tucker and Sidney Schenkier of Jenner & Block | $1,509.00 |
| Miles J. Zaremski of Fohrman, Lurie, Sklar & Simson | $47,620.88 |
| Shayle Fox and Jeffrey Colby of Fox & Grove | $48,453.59 |

These attorneys' fees and costs, nearly a quarter of a million dollars of taxpayers' money, adequately compensate the respective attorneys for their competent professional services. Fortunately, because of the settlement, significantly larger attorneys' fees and costs were not accrued. Nevertheless, were the settlement negotiations more actively pursued in better faith by the parties earlier in these proceedings, the citizens of Lake County would not now be funding to the extent provided in this opinion the internecine political warfare of their elected and appointed officials.