Margaret COLEMAN, et al., Plaintiffs,

v.

Robert McLAREN, et al., Defendants.

No. 78 C 2117.

United States District Court, N.D. Illinois, E.D.

May 14, 1986.

Jack L. Uretsky, Hinsdale, Ill., Marshall Patner, Chicago, Ill., for plaintiffs.

James C. Bakk, Asst. State's Atty., Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's March 25, 1986 memorandum opinion and order ("Opinion IV" [1]) granted the motion of Lake County Defendants for the allowance of certain attorneys' fees and expenses, chargeable jointly and severally against Hamers and their lawyers. In accordance with the directive in the last paragraph of Opinion IV, the parties have briefed several issues bearing on the amount to be awarded. For the reasons stated in this memorandum opinion and order, the requested amount is reduced to $11,195.61.

First Hamers and their lawyers object "because it is unreasonable to compensate Lake County on the same basis that a person represented by private counsel would be compensated." It is too late in the day for that argument. *Blum v. Stenson*, 465 U.S. 886, 892–96, 104 S.Ct. 1541, 1545–47, 79 L.Ed.2d 891 (1984) teaches prevailing market rates and not the actual costs of legal services are the standard for allowance of reasonable fees, even where a party (in that case the plaintiff) is repre-

---

1. Opinion IV 1 & n. 1 identified and described Opinions I through III. This opinion assumes familiarity with the earlier opinions and will use (without restating) the definitions in Opinion IV.

sented by nonprofit counsel. And in *Hamilton v. Daley*, 777 F.2d 1207, 1213 (7th Cir.1985) (citations omitted, but relying specifically on *Blum*) our Court of Appeals has made plain that is a two-way street:

> The fact that defendants' attorneys are public servants who will not personally receive any fees awarded makes no difference; we have long upheld fee awards to salaried attorneys.... Fees are based on reasonable billing rates in the relevant community, not net hourly earnings.

In support of the market-rate notion, it also bears mention that the real "costs" of legal services to public-official or governmental-body defendants—even were that the standard, as it is not—are not so easy to ascertain. Surely the salaries paid to the lawyers, their secretaries and other supporting staff are not the whole story. Determination and calculation of the properly allocable items of overhead and fixed costs, not only for the law offices as such but for a fairly allocable portion of the general costs of government, would be an enormously complex matter. Because there is no readily ascertainable surrogate for the market, a market value comparison (as directed by *Blum* and *Hamilton*) represents a fair basis for the award.

■ Hamers and their counsel next object to a straight-time multiplication of hourly rates times the time spent, without differentiating between in-court and out-of-court time. This Court has spoken to that issue, and rejected the rationale for that argument, in *Strama v. Peterson*, 561 F.Supp. 997, 1000 n. 7 (N.D.Ill.1983) and *Palmer v. City of Chicago*, 576 F.Supp. 252, 255 (N.D.Ill.1983); cf. *Roe v. City of Chicago*, 586 F.Supp. 513, 515 (N.D.Ill. 1984) (allowing a trial-time premium where the lawyers regularly charged one, a situation not involved here) and, e.g., *Harceg v.*

*Brown*, 536 F.Supp. 125, 129 (N.D.Ill.1982) (Aspen, J., approving a flat rate for all the time spent, without commenting on any need for differing rates).

■ As for the appropriate hourly rate itself, Lake County Defendants ask for $125 an hour for the time spent by Lake County Assistant State's Attorney James Bakk ("Bakk"), who during the first part of the relevant period was Chief of the Civil Division and during the last part was Chief Deputy State's Attorney (Civil Division). But that requested rate is inadequately supported by any curriculum vitae or other showing of Bakk's pedigree and experience (other than his move upward within the State's Attorney's office from 1979 to date). Sullivan's Law Directory simply discloses Bakk graduated from law school in 1978, though not reflecting from what law school and with what kind of record. Nor have Lake County Defendants offered any comparable figures for lawyers of comparable vintage and credentials, making reference only to Judge Holderman's having recently approved a $75 hourly rate for lawyers over whom Bakk has supervisory responsibility. With the burden of proof devolving on Lake County Defendants, and with this Court's knowledge of applicable rates in the higher-priced Chicago market,[2] this Court will approve no more than an $85 hourly rate for Bakk.

■ Finally Hamers and their counsel volley a congeries of attacks at the time actually spent by Bakk. It will not of course do for them to complain that much time had to be spent on the ultimately-dispositive motion, because that was engendered by the sprawling and convoluted character of Hamers' own contentions. This Court is well aware of what it and its own law clerk were forced to do to address

---

**2.** This Court is aware that its former law firm charges, as the regular hourly rate for a young lawyer with precisely the same time in practice as Bakk and with extraordinary credentials (a top scholastic record at a national law school, followed by clerkship for a federal judge and then substantial litigation experience), very substantially less than the $125 hourly rate requested here. More specificity in a published opinion would represent a potential breach of confidence, but this Court's other sources of information also confirm the appropriateness of the rate approved in this opinion.

all aspects of Hamers' position, and it is really unfair to insist (in effect) that because Lake County Defendants ultimately won, they might perhaps have gambled on presenting a less thorough case (which might then have been lost).

▮ Having said that, however, this Court believes some substantial disallowances from the claimed fees are in order. In part these are occasioned by a consideration somewhat related to that voiced by this Court in *Roe,* 586 F.Supp. at 514 and 516: that the amounts fairly chargeable against an *opponent* in a Section 1988 litigation award do not necessarily equate with the time that might possibly be chargeable to the lawyer's own client. In *that* respect, the fact that Bakk is indeed a salaried person, and is not charging his own clients on the basis of the time he spends, might well affect the manner in which he carries on litigation. Some examples will do better than any statement of general principles:

1. This Court's status calls at a great distance from Bakk's home base did not really require his invariable attendance. Arrangements could have been made for fewer than all the defense lawyers to appear, with prior discussion among them and delegation of any necessary authority to report to the Court. This Court has not applied that concept across the board (particularly where a status call before the Magistrate was also scheduled, the subject matter of which is not known to this Court). Though absolute precision is impossible, 15.5 hours are disallowed in this area.[3]

2. Bakk's portal-to-portal notion in depositions requires some modification. It represents overreaching (for example) to charge 10 hours for an 8:00 a.m. to 6:00 p.m. day, simply on the theory that (a) travel time is compensable on an opportunity-cost basis (though that is true enough in general terms, *Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984) and *In re Pine,* 705 F.2d 936, 938 (7th Cir.1983)) and (b) Bakk ordinarily lunches at his desk in 10 or 15 minutes. Where the travel time simply reflects a somewhat earlier start and a somewhat later finish during the same day than the government lawyer is wont to prefer, the strict opportunity-cost approach is not fully applicable. In this area 9.0 hours are disallowed.

3. It is difficult to delve into the gross numbers represented by the time spent by a lawyer in briefing. But this Court's 30 years at the bar have imparted a substantial sense of what ought to be involved in such activities. Taking all factors into account, this Court finds 20 hours (out of the aggregate of some 75 hours) spent on the two briefs dealing with the motion to dismiss should not fairly be thrust on Hamers and their counsel.

4. Much the same may be said of the 20.3 hours of Bakk's time on the fees-on-fees issues. Though that category of time is of course chargeable (*Bond v. Stanton,* 630 F.2d 1231, 1235 (7th Cir. 1980)), not all the time spent is necessarily to be credited. Another 4.0 hours are disallowed here.

As for out-of-pocket expenses, $11.17 in lunches and $6.00 in cab fare cannot fairly be chargeable to Lake County Defendants' adversaries. Added to the already-mentioned disallowance of $24 in train fares, the total expenses disallowed are $41.17.

In sum, the total time allowed is 48.4 hours less than the claimed 179.4 hours (156.1 plus 23.3), or 131 hours. At the $85 hourly rate, that represents a fee of $11,-135. Expenses of $101.78 less $41.17, or $60.61, are allowed. Hamers and their lawyers are therefore jointly and severally ordered to pay Lake County Defendants the sum of $11,195.61 on or before June 1, 1986.

---

**3.** That disallowance carries with it the corresponding $24 in train fares.