**Helen SCHILLING, Plaintiff,**

v.

**COMMUNITY MEMORIAL GENERAL HOSPITAL, Defendant.**

No. 85 C 1198.

United States District Court,
N.D. Illinois, E.D.

May 23, 1986.

Richard Puchalski, Doss, Puchalski & Keenan, Ltd., Chicago, Ill., for plaintiff.

Cheryl B. Bryson, Bonita L. Stone, Katton, Muchin, Zavis, Pearl, Greenberger & Galler, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On November 14, 1985 this Court issued an oral bench ruling denying the Fed.R.Civ.P. ("Rule") 56 summary judgment motion filed by Community Memorial General Hospital ("Hospital") on the claim brought by Helen Schilling ("Schilling"), in which she charges Hospital's termination of her employment had been age-discriminatory. All the factual issues that this Court found to have prevented summary

judgment stemmed from affidavits that were seriously at odds with the information Hospital had gleaned during the discovery process and on which it had based its Rule 56 motion.[1] Hospital then sought an award of fees under Rule 11, urging it would not have brought the Rule 56 motion but for its understanding of the facts induced by Schilling's discovery responses. See this Court's opinions in *W.H. Brady Co. v. Lem Products, Inc.*, 521 F.Supp. 676 (N.D.Ill.1981) (same result even under stricter standard of 28 U.S.C. § 1927) and *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555 (N.D.Ill.1984) (granting fees under Rule 11 in situation posing obverse side of the Rule 56 coin). This Court granted that motion in a March 26, 1986 oral bench ruling, at the same time requesting further submissions to quantify the award.

■ Now Hospital's request, Schilling's response and Hospital's reply have been tendered. For the reasons stated in this memorandum opinion and order, fees and expenses are awarded in the sum of $2,944.

Much of what has to be said about the issues here has previously been dealt with by this Court in *Roe v. City of Chicago*, 586 F.Supp. 513 (N.D.Ill.1984). For example *Roe, id.* at 514 (emphasis in original) said:

1. That information comprised most particularly, though it was not limited to, Schilling's answers to interrogatories, including her identification of the only people who assertedly knew facts relating to the alleged discrimination.

2. What this kind of assumption reflects is that

$$ax + by < cy,$$

where (1) x is the associate's hourly rate, (2) y is the supervising lawyer's hourly rate, (3) a is the number of hours spent by the associate, (4) b is the number of hours spent by the supervisor in identifying the problems to be worked on by the associate, conferring with the associate and reviewing and adapting the associate's work to produce a finished product and (5) c is the number of hours the supervising lawyer would have required to do the entire job himself or herself. What is missing from the formulation in that form, and has been completely absent from *every* fee submission this Court has received from a large law firm since going on the bench, is any indication that the "a" factor has been examined and discounted in recognition of

There is no justification for saddling an opponent with the kind of double-timing by lawyers reflected in this case. What is at work here is an example of what has brought the cost of legal services out of the reach of most of our populace.... Economy calls for *research* and *assistance* to be provided by less experienced lawyers (at correspondingly lower hourly rates), but that is intended to cut down the duplication of time and hence the cost. Here the costs were materially *increased* by an increased duplication of effort, and this Court has sought to carve out a substantial number of items reflecting such increase.

For the moment it will be assumed the activity of a second lawyer for Hospital—first-year associate Barbara Levine ("Levine")—was constructive, on the view the lower hourly rate of $60 charged for her time more than made up for the self-education aspect of work by an inexperienced lawyer.[2] But none of that justifies charging Schilling for the presence of two senior lawyers rather than one (time records submitted by Hospital's law firm show time spent both by the lead litigation counsel, Bonita Stone ("Stone"), and by Cheryl Bryson ("Bryson"), described (Stone Aff. 2 n.3) as "a partner in the Labor Department of Katten, Muchin, [who] has particular exper-

the self-educative aspects of almost everything a new lawyer does. That is simply not all taken care of by the lower hourly rate, despite the misleading appearance of certainty conveyed by a computer-produced printout. Here as elsewhere the computer phenomenon of GIGO ("garbage in, garbage out") must be recognized. When this Court was in practice and serving as the senior billing partner in a law firm (small in size by today's standards), every such printout was screened before a bill was made up and sent to the client, to cut back on the chargeable time fairly ascribable to such matters as (a) self-education, (b) the fact that a lawyer in training functions at less than full efficiency and (c) other factors not fairly chargeable to the client. If the fee submissions this Court now sees are any indication (and the current one is typical rather than unique in that respect), that important part of the supervising partner's billing function has disappeared from the practice of law. This is only one of the many factors that have pushed the cost of legal services to stratospheric heights.

tise in the labor/discrimination field and was also involved with the administrative proceeding initiated by the plaintiff prior to institution of this suit").[3] No part of the Bryson time will be charged against Schilling.[4]

Levine's time poses a very different problem. By definition the only legal expense properly imposable on Schilling is expense that would not have been incurred *but for* the summary judgment motion. Substantive research into age discrimination issues, even if assumed to be fully productive,[5] is ultimately usable in the litigation on the merits. From the individual descriptions of services contained in Levine's time entries attached to Stone's affidavit, and even more directly from the summary description of those services at Hosp.R.Mem. 4, the focus of Levine's research was indeed in the substantive areas (understandably so, for the law of summary judgments as such poses no real complexities). Levine's time will not be charged to Schilling either.

That leaves Stone. Unquestionably her preparation of the summary judgment motion and materials would not have been undertaken but for Schilling's delinquencies. Though some of Stone's time could undoubtedly be rejected as having been caused by the splintering of activities among the three lawyers,[6] this Court will not seek to parse her various time entries for that purpose (though it has reviewed each of the individual entries in detail).

Instead it will apply an appropriate discount to the totality of Stone's time, on the unquestionable predicate that her acquired learning of substantive age-discrimination law will have continued utility on the merits of this lawsuit. Three-fourths of Stone's time (multiplied by her $100 hourly rate, which has not been challenged by Schilling on reasonableness grounds, see Schilling Mem. 2), is therefore found reasonably chargeable against Schilling. That comes to $2,850.

Finally Schilling questions the chargeability of Lexis research. That misses the nature of Lexis, which is not truly overhead but may appropriately be billed directly to the client. That is so because, properly used, Lexis saves substantially on the time otherwise chargeable for conventional research. See, e.g., *Bennett v. Central Telephone Co. of Illinois,* 619 F.Supp. 640, 655 (N.D.Ill.1985); *United Nuclear Corp. v. Cannon,* 564 F.Supp. 581, 591–92 (D.R.I. 1983). Here, however, Levine's research time itself has not been allowed because it is reusable on the merits, and the related Lexis charges will be rejected for the same reason.

Accordingly the total amount chargeable to Schilling will be $2,850 in fees and $94 in photocopy expense, or an aggregate of $2,944. As requested by Schilling's counsel, payment of that amount will be deferred to the completion of the litigation.

**3.** This concept should not be misunderstood. What Hospital and its law firm choose to do as between themselves is their business. It may be presumed free market forces control the cost of legal services (though no client really knows the many factors [the one described in n. 2 is only one of them] that enter into whether legal fees are reasonable or not). All this opinion deals with is the chargeability of the fees to a third party. *Coleman v. McLaren,* 635 F.Supp. 266, (N.D.Ill.1986).

**4.** It is a striking commentary on the escalating costs of litigation when part of Hospital's response to Schilling's questioning of the Bryson activity is (Hosp.R.Mem. 5 n. 2):

A total of only 4.30 hours is claimed by the Hospital for Bryson's services relative to the summary judgment motion.

"Only" 4.3 hours, or $559 in real money, is likely to bulk a bit larger to individual litigants than to law firms and their institutional clients. In this instance it is something over 25% of Schilling's accumulated savings (Schilling Aff. ¶ 3).

**5.** By definition a first-year associate lacks experience in virtually every area of substantive law. For the reasons spelled out at some length in n. 2, the text assumption is not necessarily valid.

**6.** See, e.g., the Stone entries for 8/19/85 (where Bryson's records reflect a conference with Stone), 9/14/85 (where Levine records a similar conference), 10/5/85 (where Stone shows a conference with Levine) and 10/9/85 (where both Stone and Bryson show a conference between themselves).